### MASON v. CITY OF SIOUX FALLS et al.

1. It is a well settled rule that when municipal corporations seek to impose upon property owners the burden of the cost of street improvements, and to hold the property of abutting owners liable therefor, the statute or charter authorizing such improvements to be made must be strictly pursued.

2. A resolution, adopted and published, declaring it necessary to grade or otherwise improve a public street, must specifically designate the work declared necessary to be done, and the owners of property abutting upon such street will only be liable for the cost of such improvements as are specifically designated in the resolution so adopted and published in the official paper.

3. The common council of a city is authorized to change the grade of the streets, avenues and alleys, subject to the provisions of the law; but such change of grade, materially enhancing the cost of grading such street, avenue or alley, cannot be made after the resolution declaring the necessity for grading the street, avenue or alley has been adopted and published, the time for filing a protest by property holders has expired, and a contract for grading executed, without adopting a new resolution, and publishing the same, etc., as provided by law.

4. The cost of curbing Prairie avenue, contracted for by the city under the following resolution: "Resolved, that it is necessary that Prairie avenue, between Fourth and Twelfth streets, in said City of Sioux Falls, be graded, and worked to the established grade,"—cannot be imposed upon the property abutting upon said improvement. The cost of the grading, however, if it can be ascertained, independently of the curbing, may be enforced against the abutting property.

5. One of the methods of acquiring the right to the use of land for a street is that of the implied dedication of the same by the owner of the fee. In an implied common-law dedication, the use of such land by the public as a street, with the knowledge of, and without objection by, the owner of the fee for a number of years, is evidence of such dedication, and from such user by the public, without objection by the owner of the fee, a jury may presume an actual dedication of such street to the public use.

6. The owners of property abutting upon a street that has been used by the public as a street for a number of years cannot defeat the city in enforcing the collection of street assessments for the cost of improving such street, on the ground that the title to such street, or some part of it, is not in the city.

(Syllabus by the Court. Opinion filed April 5, 1892.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action to enjoin defendants from selling real estate for special assessment tax. Judgment for plaintiff. Defendant appeals. Reversed.

The facts are stated in the opinion.

*Charles L. Brockway*, for appellants.

Laws of 1890, p. 94, §§ 15 and 16 and p. 95, § 18, give the

city council power to change and establish the grade of streets. A party cannot avoid a tax wholly because a part is void. Dillon on Mun. Cor. 924; Elliott, Roads and Streets, 386. A city is not compelled to show absolute title to a public street in order to grade and improve it at expense of abutting property. Elliott, Roads and Streets, p. 380; Holmes v. Hyde Park, 121 Ill. 128; Village v. Borden, 94 Ill. 26.

*Keith & Bates*, for respondents.

The special tax, and the contract to grade and improve land in which neither the city nor the public had any interest are both void. City v. Laing, 6 Kan. 167. The statute providing for public improvement by assessment must be strictly folfowed or the assessment will be void. 2 Dill. Mun. Corp., § 769; 1 Blackwell Tax Titles, § 612; McLauren v. Grand Forks, 43 N. W. 710; White v. Stevens, 34 N. W. 255; Merritt v. Village, 79 N. Y. 309; Hoyt v. City, 19 Mich. 39; Hewes v, Reis, 40 Cal. 255; Pound v. Chippewa, 43 Wis. 63.

CORSON, J. This was an action to enjoin the defendants from selling certain real estate of the plaintiff charged with a special assessment for grading and curbing Prairie avenue from Fourth to Twelfth streets, in the city of Sioux Falls. Judgment for plaintiff and defendants appeal. The facts, briefly stated, are that, in 1881, one John McClelland was the owner of the N. E. ¼ of section 17, township 101, range 49. In that year he platted a portion of the land into lots and blocks, and called it "McClelland's Addition to West Sioux Falls." On the west side of the blocks platted, from block No. 19 to 24, inclusive, extending from First to Sixth streets, no street was laid out, so far as shown by the plat of said addition. Some time subsequently said McClellan conveyed to plaintiff a portion of said tract of land not platted by metes and bounds, commencing at a point 66 feet westerly from the south-west corner of block 23 of said addition, and so described it as to leave a strip of land 66 feet in width between the land of plaintiff and said block 23 in his addition. In 1884 McClellan conveyed to the public by deed a strip of land 33 feet in width, adjoining on the west block 24, and extending about one-half the length of

block 23, and about one-half the length of the land so purchased by plaintiff of said McClellan; also in the same deed he conveyed to the public a strip of land 66 feet in width between blocks 19 and 20 of McClellan's addition on the east side, and of blocks 25 and 26 in McClellan's Second addition on the west side; and in the deed of the same is the following clause: "The same to be a public highway, and form a continuation of the street known as 'Prairie Avenue,' in the city of Sioux Falls." On the map or diagram, the land of plaintiff, with that of Joseph M. Mason (which originally constituted a part of the tract conveyed by McClellan to plaintiff) as shown, constitutes a block extending from Fourth to Fifth streets, and fronts on Prairie avenue, is 66 feet in width, and is directly west of and opposite block 23 of McClellan's addition. North of plaintiff's land, and on the west side of what is claimed by defendant's to be Prairie avenue, are two blocks, constituting Cooper's addition, and being a part of the same quarter section, and north of these lies McClellan's Second addition. How far north of First street or south of Twentieth street Prairie avenue extends is not shown, and whether graded or not does not appear. In September, 1889, the city council passed a resolution that it was necessary that Prairie avenue should be graded between Fourth and Twelfth streets, and that the cost of such improvement should be met by special assessments upon the property abutting on the same. This resolution seems to have been duly published in the official paper of the city, and no protest of the property owners along said prairie avenue seems to have been filed. In April, 1890, a contract was let by the city to one Small to grade and curb the said avenue. After this contract was made the city council passed an ordinance changing the grade of Prairie avenue between Fourth and Twelfth streets. No new resolution was adopted by the city council for grading the avenue, after so changing its grade, but the contract was completed as originally made. The cost of the grading and curbing was apportioned and assessed to the property owners abutting on the avenue, and, the time for payment having expired, the city was

about to proceed to sell the property when this suit to restrain such sale was commenced.

The grounds mainly relied on by the plaintiff for annulling the special assessment proceedings, as set out in her complaint were: (1) That the cost of curbing Prairie avenue was included in the assessment, for which the property owners were not liable, as the curbing was not specified in the resolution for grading; (2) because, after the resolution for grading the avenue was adopted, published, and the time for the property owners to protest had expired, and a contract for the grading had been let, the grade was changed by ordinance, and no new resolution adopted; and (3) because the title to the westerly strip of land 33 feet in width, in front of plaintiff's premises was not in the city, but in McClellan, and that, therefore, her property did not abut upon Prairie avenue, and was not subject to the assessment.

On the trial the plaintiff called as a witness one W. H. Holt, city auditor, and, after he had given the usual preliminary evidence as to the ordinance changing the grade,—being No. 112, passed June 2, 1890,—the ordinance was offered in evidence. It was objected to by the counsel for the city, for the reason that by the charter of the city the matter of establishing the grades of streets was placed under the control of the common council, and that body was authorized to establish and change such grade at will, and that the fact that the grade of Prairie avenue was changed after the contract to grade the same was executed is not material in this case. The court overruled the objection. We are of the opinion that the court ruled correctly. We have no doubt but that, as contended by the counsel for the city, the common counsel had the right to establish the grades of streets, and change them at will, under the provisions of the law, and subject to the limitations in the law. But the exercise of this power is not without limitation other than that contained in the law. It cannot be exercised to the injury of the property owners, after a resolution has been adopted and published requiring a street or avenue to be graded, and the time for protesting by the property owners has

expired.   Such a change in the grade might seriously affect
property owners, by largely increasing the burden imposed
upon them by the resolution as originally adopted, and against
which grading they might have protested had the grade been
changed prior to the resolution requiring the grading to be
done.   When the grade established is so changed as to mater-
ially affect the interests of the property owners after the reso-
lution is adopted declaring the necessity of grading the street,
in our opinion the proceedings under the resolution become null
and void, and a new resolution, publication, etc., are required
before the property can be made legally liable for the cost of
such grading.   A slight change, however, which does not ma-
terially enhance the cost of grading to the property owners,
and which, had it been made prior to the publication of the
resolution, would not have changed the course adopted by the
property owners, will not vitiate the proceedings.   It is there-
fore a question of fact to be determined by the jury, or court
sitting as a jury, whether or not such change has materially
increased the cost of the grading, and how far the change may
have affected the property holders injuriously.   In this case
there was no evidence as to the extent of the change in the
grade, or whether it increased or diminished the cost of the
grading, and the ordinance itself could afford the court but
little aid in solving the question; but as it was competent to
show that such change had been made, the ordinance was the
best evidence of that fact, and was therefore properly admitted
in evidence for that purpose.   But, without other evidence
showing the materiality of the change, the court could not say
that the proceedings were irregular, or that the assessment
should for that reason be held invalid.

The appellants also contend that the court erred in sustain-
ing plaintiff's objection to the following question, asked defend-
ants' witness Howe: "Of what did the curbing consist?"   This
was objected to as incompetent and immaterial.   The objection
was sustained.   The defendants then offered to show that the
curbing was necessary in grading this avenue to keep the road-
bed in its place.   This offer was objected to and the objection

sustained. We are of the opinion that the court properly sustained plaintiff's objections to this evidence. The resolution under which the grading in this case was done is as follows: "Resolved, that it is necessary that Prairie avenue, between Fourth and Twelfth streets, in said city of Sioux Falls, be graded and worked to the established grade of said avenue." It will be noticed that curbing is not mentioned in the resolution, and the city cannot, therefore, hold the property owners or the property liable for the cost of the curbing. To render property subject to the cost of street improvements, the requirements of the statute must be strictly complied with. Section 973, Comp. Laws, provides: "When the city council shall deem it necessary to open, widen, extend, grade, pave, macadamize, bridge, curb, gutter, or otherwise improve any street, alley, avenue, lane or highway, or other public grounds within the city limits, for which a special assessment is to be levied as herein provided, the city council shall, by resolution, declare such work or improvements necessary to be done, and such resolution shall be published for four consecutive weeks at least once a week in the official newspaper of the city," etc. It further provides that, if within 20 days after such publication a majority of the property owners do not file a written protest, the city council shall have power to contract for the work to be done, and levy and collect assessments to pay the cost of the same. The resolution adopted and published must specifically designate the work declared necessary to be done, and the property owners and the property will only be liable for the cost of such improvements as are so specifically designated in the resolution and published in the official paper. This resolution, and publication thereof, is the only notice required to be given property owners that the improvement is ordered made, and the improvements, therefore, contracted for must conform strictly to the improvements designated in the resolution adopted and published, and for such as are not specifically designated the city cannot impose the cost upon property owners or the property abutting upon the improvements. It is a well-settled rule that when a municipal corporation seeks to

impose upon citizens the burden of making public improvements, and to hold the property of the individual liable therefor, the statute authorizing such improvements at the expense of the citizen must be strictly pursued. 2 Desty, Tax'n, p. 1241; 2 Dill. Mun. Corp. § 769; 1 Blackw. Tax Titles, § 612; Merritt v. Village of Portchester, 71 N. Y. 309; Hewes v. Reis, 40 Cal. 255; McLauren v. City of Grand Forks, (Dak.) 43 N. W. Rep. 710; White v. Stevens (Mich.) 34 N. W. Rep. 255; Hoyt v. City of Saginaw, 19 Mich. 39; Pound v. Chippewa Co., 43 Wis. 62. But, while the property cannot be held for the cost of the curbing, it may be held for the grading, when the cost of grading, independently of the curbing, can be ascertained. In this case there seems to be no difficulty in ascertaining the cost of the grading, as the curbing was contracted for as a separate item.

This brings us to the consideration of the more important question in this case. On the trial the counsel for the city asked witness Blackman the following question: "State what you know about that strip of ground in front of the Mason property, running from there north and south,—about its being traveled as a public street." This was objected to by the counsel for the plaintiff as incompetent and immaterial, and as not being a proper way to prove it is a highway, and also because the evidence shows that no resolution was ever adopted by the city council to widen or alter, or in any way change, Prairie avenue. The objection was sustained, and exception taken. Counsel for the city then made the following offer: "Defendants' counsel offers to show that ever since and prior to the 6th of June, 1881, a strip of ground 66 feet in width, running north and south, on the west side of what is known and designated on the plats of the city of Sioux Falls as 'McClellan's Addition to West Sioux Falls,' and in front of and adjoining the property of the plaintiff in these cases, has been used and traveled as a highway, and has been so used and traveled with the knowledge and consent of John McClellan, the former fee owner of the northeast quarter of section 17, township 101, range 49, upon which said grounds are located." The same

objection was made to this offer. Same ruling and exception. For the purposes of this case we must assume that counsel could have proved the facts contained in his offer, and upon this assumption we are of the opinion that this evidence should have been admitted, and that its exclusion was error.

One of the grounds relied on by the plaintiff to maintain her action was that the strip of land 33 feet in width, in front of her premises, was not a part of Prairie avenue; or, in other words, that Prairie avenue, in front of her premises, was only 33 feet in width, and that between her premises and the avenue was a strip 33 feet in width, that belonged to McClellan, and not to the city. It was admitted by the city that the legal title to this strip was in McClellan, but it contended that by his acts he had dedicated to the city an easement in it for a public street, and that it properly constituted a part of Prairie avenue. Among the methods of acquiring the right to the use of land for a street is that of dedication by the owner, either express or implied. In an implied common-law dedication, it is necessary that there should be an appropriation of land by the owner to public use by some act or course of conduct from which the law will imply such an intent. Elliott, Roads & S. p. 92. It is true, an actual intent to dedicate the land to public use must be found to exist, but proof of user for a period much shorter than that required to show title by prescription may be sufficient to prove such intent and dedication. The extent and character of the use may furnish evidence of the intention to so dedicate. In the case of City of Cincinnati v. White's Lessees, 6 Pet. 431, a leading case upon this subject, the supreme court of the United States, speaking by Mr. Justice THOMPSON, says: "The right of the public in such cases does not depend upon a twenty-years' possession. Such a doctrine, applied to public highways and the streets of the numerous villages and cities that are so rapidly springing up in every part of our country, would be destructive of public convenience and private right. The case of Jarvis v. Dean, 3 Bing. 447, shows that rights of this description do not rest upon length of possession. The plaintiff's right to recover in that case turned upon the question whether

a certain street in the parish of Islington had been dedicated to the public as a common public highway. Chief Justice BEST upon the trial told the jury that, if they thought the street had been used for years as a public thoroughfare with the assent of the owner of the soil, they might presume a dedication; and the jury found a verdict for the plaintiff, and the court refused to grant a new trial, but sanctioned the direction given to the jury, and the verdict found thereupon, although this street had been used as a public road only four or five years; the court saying the jury were warranted in presuming it was used with the full assent of the owner of the soil. The point, therefore, upon which the establishment of the public street rested, was whether it had been used by the public as such, with the assent of the owner of the soil; not whether such use had been for a length of time which would give the right by force of the possession, nor whether a grant might be presumed, but whether it had been used with the assent of the owner of the land; necessarily implying that the mere naked fee of the land remained in the owner of the soil, but that it became a public street, by his permission to have it used as such. Such use, however, ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." In Case v. Favier, 12 Minn. 89, (Gil. 48,) the court says: "It is not necessary to establish dedication to show an adverse, exclusive, and uninterrupted possession of the premises for twenty years, with the actual or presumed knowledge of those interested. The right of the public does not rest upon a grant by deed, nor twenty years' possession, but upon the use of the land, with the assent of the owner, for such length of time that the public accommodation and private right might be materially affected by an interruption of the enjoyment. The length of time of the user is a fact for the jury to consider, as tending to prove an actual dedication and acceptance by the public." In this case the public had used the premises less than 10 years. Hobbs v. Inhabitants of Lowell, 19 Pick. 400; City of Chicago v. Wright, 69 Ill. 318; Cemetery Ass'n v. Meninger, 14 Kan. 312; 2 Dill. Mun. Corp.

§ 638, and cases cited; 2 Greenl. Ev. § 662; Elliott, Roads & S. p. 126.

The facts in evidence in this case, when the offer by the defendants was made, were such as to raise a strong presumption of dedication of this avenue between First and Sixth streets to the public. The leaving a strip of land 66 feet in width by McClellan between his addition and the land of plaintiff; subdividing his westerly tier of blocks into lots facing the west; conveying a strip 66 feet in width between his two additions in 1884; the laying out of Cooper's addition so as to leave 66 feet between that and his other property,—all tended strongly to show that he intended that 66-foot strip for the public use. These facts, followed by the evidence offered, that the whole 66-foot strip had been used before and since 1881 as a public highway, with the knowledge of and without objection by McClellan, might have been taken by the jury to establish at least a *prima facie* case of a dedication.

But the evidence was clearly admissible upon another ground. As the plaintiff contended her property did not adjoin or abut upon Prairie avenue, because the city did not own the 33-foot strip in front of her property, it was competent for the city to show that this 33 feet was used by the public, as well as the easterly 33 feet adjoining McClellan's addition, and that it was exercising control over it by grading it the whole width. If such was the case, and the property was of such a character that the city could appropriate it or acquire an easement therein for the use of the public, the plaintiff could not defeat the city in its efforts to enforce the collection of the street assessments, on the ground that it did not absolutely own the 33 feet in question. Whether it had acquired the title or not was not material to the plaintiff, so long as the same was used by the public, and the right to so use it might be acquired by the city if it did not already possess the right by dedication or otherwise. The views expressed by the supreme court of Illinois in an analogous case (Holmes v. Village of Hyde Park, 121 Ill. 128, 13 N. E. Rep. 540) fully meet our approval. In that case the court says: "The question here is whether the owner of property

specially assessed for the purpose of grading and paving a street of an incorporated village can interpose the objection, on an application to the court to confirm the assessment, that the village has not acquired title to the soil to be graded and paved as a street. * * * Whether the compensation shall be made to the owner of the soil for the land taken for the street, before or after the assessment for its improvement, cannot make that assessment either larger or smaller; and so, whether title to the soil, entered upon for the purposes of the street, has been heretofore, or remains to be hereafter, acquired, is a distinct question from that of the benefits and damage to result to the adjacent land owner from the improvements of such street, and the latter has no dependance on the former. The owner or claimant of ownership of the soil covered by the street is not, as such, merely required to be made a party to the assessment proceedings, and manifestly could not, therefore, be concluded or materially affected in his rights by the judgment confirming the assessment. It may be, if it were made to appear that there was probability that the village would not acquire title to the street, and so that the benefit of any improvement to be made by aid of the special assessment would be lost to the public, a bill in chancery would lie to enjoin the assessment proceedings until the title should be acquired; but then all the claimants to title would be parties, and concluded by the adjudication. The judgment is affirmed." Village of Hyde Park v. Borden, 94 Ill. 26. That case seems to lay down a just and proper rule. Cities cannot, in improving their streets, alleys, etc., be called upon by the citizen in every case to show that they have the legal title to the property they are seeking to improve before they can enfore the collection of assessments made for such improvements. It is sufficient for the city to show that the street, avenue, or alley sought to be improved is one that has, for a considerable length of time, been used as a public street, and is such property as can be appropriated by the city, and is, in the language of Chief Justice SHAW in Hobbs v. Inhabitants of Lowell, 19 Pick. 405, a street de facto. For the error of the court in excluding the evidence offered the judgment of the court below is reversed, and a new trial ordered. All concur.