The Atchison, Topeka & Santa Fe Railroad Company v. S. S. Peterson, as Sheriff, and M. W. Stewart, as Treasurer, of Wyandotte County, Kansas, and The City of Argentine.

No. 188.

1. Assessment for Local Improvements — railroad lands used for depots and other purposes in cities, subject to. Lands owned by a railroad company and used for its depot, warehouse, roundhouse and shops, situated within a city of the second class, are liable to assessments for local improvements as other lands are.

2. ———— against railroad lands, to be collected by tax warrant. It is the policy of the Legislature of this State to maintain the railroad plants within the State in their entirety, and such local assessments on lots of land within cities of the second class are, by force of the statutes of the State, made a personal charge against railway companies owning such lands ; and the statutes authorize the county treasurer, in behalf of such cities, to enforce the payment of such local assessments in the same manner as the general revenues of the State are collected against such railway companies, by the issue of a tax warrant and the seizure and sale of the personal property of such railway companies thereunder.

3. ———— *legislature may make landowner personably liable for.* The Legislature has the power to make such assessments a personal charge, and no provision of the Constitution of the State is thereby violated.

4. ———— *what subject to and by whom power of, exercised, for legislative determination.* The question as to whether lands situated within a city are subject to such local assessments is a question for legislative determination; and the Legislature can authorize the exercise of such power by the municipal corporation or by a board of commissioners to be appointed by it or by such municipal corporation.

5. ———— *exercise of such legislative authority conclusive on courts.* The exercise of this legislative authority is conclusive upon the courts.

Error from Wyandotte District Court. Hon. Henry L. Alden, Judge. Opinion filed April 30, 1897. *Affirmed.*

Every city of the second class has power '' to provide a system of sewerage and drainage for the city, or any part thereof, and to build and construct sewers or drains by districts or otherwise '' as the mayor and council may designate ; the costs and expenses to be assessed '' against all the lots or pieces of ground contained in the district '' in which the sewer is situated. The assessments are to be '' certified by the city clerk to the county clerk, to be placed on the tax roll for collection, subject to the same penalties, entitled to the same rebates, and *collected in like manner*, as other taxes.'' If the mayor and council deem proper, the cost may be made payable in installments, for which improvement bonds may be issued ; and, in that event, assessments are to be levied each year sufficient to take up the maturing bonds. Gen. Stat. 1889, ¶ ¶ 834, 835.

Under this authority, the mayor and council of Argentine, a city of the second class, in October, 1890, by ordinance duly passed and published, divided the

City into two sewer districts and provided for the construction of a sewer in each.    Contracts were let, the work completed, improvement bonds issued running through a period of ten years, and, in August, 1891, the first special assessment was levied.    The plaintiff in error owned certain lands within each of the sewer districts, which lands lay adjacent to its right of way and were occupied and used by the plaintiff in error for side tracks, yards, water and fuel stations, station houses and other purposes connected with the operation of its railroad, and these lands were assessed to the amount of $475.46, like other lands and lots, for the payment of the improvement bonds.    The assessments were certified by the county clerk and placed upon the tax roll.    The plaintiff in error did not pay its assessments, and, in August, 1892, the County Treasurer issued a tax warrant for the amount, in the same manner as tax warrants are issued for the collection of *personal* property taxes when delinquent.    The Sheriff was about to levy this tax warrant when the plaintiff in error commenced this action and obtained a temporary injunction.    The case was afterward tried and special findings of fact were made by the court substantially as above stated in brief, with the additional finding that all the real estate of the plaintiff in error so assessed was owned and used by the plaintiff in error "solely for railroad property necessary for the convenient and daily operation of its said road at said point," and was "included in the property assessed by the Board of Railroad Assessors of the State of Kansas."    Judgment was rendered, dissolving the temporary injunction and adjudging the costs against the plaintiff in error, which, upon exception taken, brought this proceeding in error.

The General Statutes (¶ 6873, Gen. Stat. 1889) require all railroad property to be assessed annually by the Board of Railroad Assessors, as follows :

"The board, when properly organized as herein provided for, shall proceed to ascertain all the *personal* property of any railway company owning, operating or constructing a railway in this state, which, for the purposes of assessment and taxation, shall be held to include the track, roadbed, right of way, water and fuel stations, buildings and land on which they are situated, adjacent to or connected with the right of way, machinery, rolling stock, telegraph lines, and all instruments connected therewith, material on hand and supplies provided for operating and carrying on the business of such railroad, together with the moneys, credits and all other property of such railway company used or held for the purpose of operating its railroad by such railway company, and appraise and assess such property *as personal property* at its actual value in money."

This assessment and appraisement having been made, the State Auditor is required to certify, in detail, to each county clerk, the railroad property and its value situated in the county and in each city or township. The property thus certified is to "include a full list, with city and township where located, of all side tracks, turnouts, depots, station houses, machine shops, or other buildings, situated wholly or in part on right of way, platforms, fuel and water stations, with the machinery and tanks connected therewith, giving the length of each second or side track or turnout, and the assessed value of each of them in the list." Gen. Stat. 1889, ¶ ¶ 6879, 6880, 6881. The county clerks are to enter the property upon the tax-roll. ¶ 6884.

The foregoing statement will suffice to make clear the points discussed by counsel and decided in the opinion of the court.

A. T. & S. F. Rld. Co. v. Peterson.      107

April 30, 1897.      Opinion.   Mahan, P. J.      E. Div.

*A. A. Hurd*, and *Stambaugh & Hurd*, for plaintiff in error.

*H. A. Bailey*, for defendants in error.

Mahan, P. J.   While there are nine assignments of error made by the plaintiff's counsel in their brief, there are in fact but two questions involved in the decision of the case.   The first is, whether lands owned by a railroad company within the corporate limits of a city of the second class are liable to assessments for local improvements,— in this case, for the construction of a sewer.   The second question is, whether, in case such lands are subject to be assessed for local improvements, the statutes authorize a warrant to be issued by the treasurer of the county to enforce the collection of the assessment.

There is no difficulty in answering the first question. The contention of counsel for the exemption of railroad lands from liability to these assessments, is based, chiefly, upon the provision of article 7, chapter 107, of the General Statutes of 1889, which provides the manner of assessing railway property for taxation. This applies to the general revenue, which only can properly be denominated taxation.   Special assessments are not taxes ; and this class of burdens which are compensated by benefits, is governed by entirely different law.   It has been expressly — almost universally — held that exemptions from taxation do not include exemption from assessments for local benefits. Cooley on Taxation, ( 1st ed.,) pp. 146, 456 ; *Paine v. Spratly*, 5 Kan. 525 ; *Reeves v. The Treasurer of Wood County*, 8 Ohio St. 333.

It is also contended that, because the provision of the general tax law above referred to declares that,

for the purpose of taxation, railroad property shall be considered personal property, therefore, for all purposes, the right of way, roadbed, depot grounds, and everything pertaining to the road, are personal property. This contention is untenable. This property is declared personal property for the purposes of taxation for general revenue only. For any other purpose it is as much real estate as any land, without regard to the use to which it is put. Upon the question of the exemption of land used for railroad purposes from special assessments, it is sufficient to say that it would require a specific exemption to withdraw such land, embraced within the corporate limits of a city, from the operation of a law authorizing such assessments. Cooley on Taxation, (1st ed.,) pp. 146, 147 ; *Northern Indiana R. R. Co. v. Connelly*, 10 Ohio St. 159 ; *Appeal of North Beach & Mission Railroad Company*, 32 Cal. 499 ; *The B. & M. Railroad Company v. Spearman and the City of Mount Pleasant*, 12 Iowa, 112. The plaintiff in error is a private corporation. Its property is private property ; and there is nothing in the statute justifying it in claiming an exemption from any kind of taxation to which the property of every citizen is liable. There was no attempt in this case to sell any part of the plaintiff Company's depot grounds, or right of way, or any other part of its real estate ; so that the questions of severance and public interest are not, as counsel contend, involved in this case.

1. Railroad lands subject to assessment for local improvements.

The plaintiff in error contends that it is not within the constitutional power of the Legislature to make an assessment of this kind a personal charge against the owners of the land. There are but two states in the Union, to wit, California and Missouri, where it has

A. T. & S. F. Rld. Co. v. Peterson.    109

April 30, 1897.     Opinion.    Mahan, P. J.          E. Div.

been held that such assessments cannot be made a personal charge against the resident owners; and these are the authorities cited by counsel in their brief in support of the contention that such assessments cannot be made a personal charge. Judge Cooley, in his work on Taxation (page 473), says: "But at present it must be conceded that the overwhelming weight of authority is in favor of the right;" and he makes this concession as to the authorities against his personal views. He says again (page 472): "But the practice of making these assessments a personal charge against resident owners, has been almost universal."

3. Legislature may make land-owner personally liable for assessments.

On the question of benefits, counsel for plaintiff in error cite in their brief *Allegheny City v. Railroad Co.*, (138 Penn. St. 383,) to the effect that the law presumes that all land of individuals or corporations is benefited, and at the same time presumes that the roadbed, depot grounds, etc., of a railroad are not benefited; but it would seem that the decision cannot be sustained, upon either principle or authority. In the first place, it is the duty and authority of the Legislature to determine what property is benefited by these local improvements, and its determination is conclusive. Further, that power may be delegated to a board of assessors or commissioners, appointed for the purpose under the legislative authority, which board views the estates and determines the benefits that, in their opinion, the estates respectively receive from the work proposed. When the Legislature, by the direct exercise of its authority, or by the exercise of its authority through a board of commissioners or assessors appointed by the Legislature or under its authority,

4. Subject of, and exercise of, power of assessment, for legislative determination.

apportions the benefits and levies the expenses, it is
an exercise of legislative authority, and will not be
interfered with by the courts. So it is not a matter
arising upon presumption; but it is an exercise of
legislative authority, over which the courts have no
control, but, where the commissioners

**5. Legislative determination conclusive on courts.** have jurisdiction, that is, where the
property is subject to the assessment, is
conclusive and binding upon the courts. As to the
determination of benefits being an exercise of legisla-
tive authority conclusive upon the courts, see Cooley
on Taxation, pp. 448, 449, 450, and cases there cited.
The statute conferring the authority says that the cost
shall be assessed against the lots or pieces of ground
contained in the district in which the sewer is situ
ated, and shall be levied and collected as one tax, in
addition to other taxes and assessments, and shall be
certified by the city clerk to the county clerk, to be
placed on the tax-roll for collection, subject to the
same penalties, entitled to the same rebate, and col-
lected in like manner as other taxes.

Judge Dillon, in his work on Municipal Corpora-
tions, (3d ed., *note* 2 to section 737,) says:

"Subject to constitutional restrictions, in the par-
ticular state, it is within the *power of the legislature* of
a state to ascertain the public burdens to be borne and
the persons or classes of persons who ought to bear
them, and its determination is not judicially review-
able." *Scoville v. Cleveland, City of,* 1 Ohio St. 127;
*Warren v. Henly,* 31 Iowa, 31.

And further, in section 740:

"In the absence of special constitutional restric-
tions, the legislature may *confer the taxing power upon
municipalities* in such measure as it deems expedient;
in other words, with such limitation as it sees fit, as
to the rate of taxation, the purposes for which it is

A. T. & S. F. RLD. Co. v. PETERSON.     111

April 30, 1897.     Opinion.   Mahan, P. J.     E. Div.

authorized, and the objects (that is, the property) which shall be subjected to taxation.''

The legislature cannot confer any greater power than it possesses, and it must observe the restrictions and limitations of the organic law ; but any tax which it might impose it can authorize a municipality to impose. *Hines v. City of Leavenworth*, 3 Kan. 186 ; Dillon on Municipal Corporations, vol. 2, § 761. It follows that a court declares benefits or no benefits, not upon a presumption, but upon a legislative determination,— the exercise of the legislature's prerogative pertaining to the taxing power ; because the levying of these special assessments pertains to the taxing power as much as does the collection of general revenues. So that, when we have determined that these lands, notwithstanding they are used by the Railroad in the performance of its duties as a common carrier, are subject to these special assessments, the question of benefits is a fact that the legislative authority has determined and the court cannot inquire into.

The remaining question is as to how these taxes shall be collected. As heretofore stated, the statute does not make these assessments liens upon the land or lots, nor does it authorize a sale of the lots to enforce the payment ; that method cannot be resorted to. *Paine v. Spratly*, supra ; *City of Leavenworth v. Laing*, 6 Kan. 274. If from the statute it is apparent that it was the intention of the Legislature that these local assessments should be made personal charges against the railway companies, owners of the land, then the statutory provision that they shall be collected as other taxes, warranted the County Treasurer in proceeding to collect them as other personal charges or taxes against railway companies are collected. It was

112　　A. T. & S. F. Rld. Co. v. Peterson.

N. Dept.　　　　Opinion.　Mahan, P. J.　　　　5 Kan. App.

doubtless the intention of the Legislature that the city should, in some manner, by itself or through the constituted authorities, have power to collect these assessments. The statute says that, after being put upon the tax rolls, they shall be collected by the county treasurer as other taxes are collected. They are not made liens upon the lands. No authority is conferred by the statute to enforce the collection by the sale of the lands. If they are not charges upon the lands, that is, liens upon the lands, and if the land is not liable to be sold for their payment, the only known method, under our statutes, for their collection is by a warrant issued by the county treasurer, directed to the sheriff, to be collected from the party liable to pay them. The language of the statute precludes the idea of the city enforcing payment by any judicial process; for it expressly says, they shall be certified to the county clerk, who shall put them on the tax roll and collect them as other taxes are collected. If not by the sale of the lands, then the only other method is by the enforcement of a personal liability; otherwise, there would be no known method of enforcing their payment.

It is the policy of our State, as well as of the other states of the Union, to permit local self-government in municipalities; indeed, it has been held to be a right inherent in municipalities. There can be no question but that the Legislature intended that cities of the second class should require each tract within a sewer district to bear its proportionate share of the burdens of the construction of a sewer in that district. It ought to be apparent to every one that a railroad company is as much interested in, and derives as much benefit from, having its grounds drained, as any individual in the sewer district, owning lands; especially

A. T. & S. F. RLD. CO. v. PETERSON.     113

April 30, 1897.     Opinion.  Mahan, P. J.          E. Div.

as much so as any church, which is exempt from the
ordinary revenue taxation, but must contribute its
*pro rata* to these local improvements.  The Legislature
has not seen fit to exempt railroad property from these
local assessments; and we can conceive of no good
reason why it should.  It is unnecessary to say that a
municipal corporation can only do those things which
it is authorized to do by the Legislature.  With respect
to the control of local affairs, a city of the second class,
like a township, is simply a division of the State, and
derives all of its authority from the State.  Prior to
the statute authorizing the incorporation of cities of
the second class, when all cities were of one class, the
Legislature saw fit to confer upon them the right to
sell lands to enforce the payment of local taxes, but
not assessments.  After the statute authorizing the
organization of cities of the second class, the Legisla-
ture saw fit to withdraw from the cities the power to
sell land, doubtless for a good reason, and made the
provision to which reference has heretofore been made
for the collection of both ordinary taxes and local
assessments.  It still authorized the city to lay the
tax and divide the city into sewer districts, and author-
ized its treasurer to receive voluntary payments,
but reserved to its own agents, acting directly un-
der its authority as a State, to enforce the payment
where that was necessary, and required the city clerk
to certify the taxes and assessments for improve-
ments to the county clerk, to be entered upon the tax
roll as the taxes of the State are entered ; and author-
ized the county treasurer to collect the cities' taxes
and assessments for improvements in the same man-
ner, giving like rebates, inflicting like penalties as in
case of its own taxes and the taxes for county and
other purposes.  In doing this it established a uniform

114    A. T. & S. F. Rld. Co. v. Peterson.

N. Dept.         Opinion.   Mahan, P. J.         5 Kan. App.

system of sales of land and a uniform method for the collection of all taxes under its authority ; and although it does not say in the act that taxes levied upon lands of citizens and corporations, shall be collected by sale of the lands, and that taxes levied upon the lands of railroad corporations used in the performance of its duties as a common carrier shall be collected as a personal charge, the inference is indisputable.   The intention of the Legislature that its officer, the county treasurer, should enforce the payment of these city taxes and assessments in the same manner that the county treasurer enforces the collection of other taxes, is clear.

It is the policy of the State to treat railroad property as an entirety, as urged by counsel for plaintiff in error.   This rule is not violated by authorizing the city to make the assessment, and it is upheld by directing the county treasurer to make the collection of the city taxes the same as he makes the collection of the State taxes.

Under specific authority of the statute, the county treasurer issues a warrant for the collection of all railroad taxes of the State, county, school district, township, and road district, not paid voluntarily, and when the Legislature says that the county treasurer shall collect the city taxes in the same way, it must mean that he shall carry out the same policy with respect to all property which the State provides for in relation to its own taxes.   It follows necessarily that the Treasurer was authorized to issue a warrant in the case of property assessed for local improvements, which belonged to the Railroad Company and which was a part of its railway system.

2. Assessment on railroad lands collected by tax warrant.

Hence, we hold, *first*, that the Railroad's property

was subject to the assessment for the construction of the sewer in the district in which the land is situated, notwithstanding it was used as, and was a part of, the Railroad Company's system in the operation of its road'; and, *second*, that the Legislature intended that the assessments levied upon such lands should be collected by warrant as personal taxes are collected.  Judgment affirmed.