No. 18,598.

The Union Pacific Railroad Company, *Appellant,* v. The City of Kansas City, Kansas, et al., *Appellees.*

SYLLABUS BY THE COURT.

1. INJUNCTION—*Assessments — Grading Boulevard — Excessive Valuations—Tender Not a Prerequisite to Commencing Injunction Proceedings.* Injunction is an equitable action, and where such an action is brought to enjoin a city from collecting an assessment made on a tract of unplatted land for the grading of a boulevard in the city, on the ground that the whole or a part of the land is not subject to such assessment, and the assessment being a percentage on the appraised value of the land per acre, is excessive for the reason that the entire tract does not contain as great an acreage as is assessed. *Held,* that there is no admitted liability of which tender of payment should be made as a prerequisite to the right of bringing the action.

2. SAME—*All pertinent Controversies Should Be Adjudicated.* Equitable jurisdiction having been acquired in the action, all the pertinent controversies between the parties should be adjudicated therein.

Appeal from Wyandotte court of common pleas; HUGH J. SMITH, judge. Opinion filed June 6, 1914. Modified and affirmed.

*R. W. Blair, B. W. Scandrett, C. A. Magaw,* and *T. M. Lillard,* all of Topeka, for the appellant.

*Richard J. Higgins,* of Kansas City, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This action was brought by appellant to enjoin the assessment and collection of a special-assessment tax against it on its right of way for the grading of Muncie boulevard, in the city of Kansas City, Kan. Appellant contends, first, that the assessment is illegal because its land is not benefited by the grading of the boulevard and is a portion of its right of way fenced off from the boulevard and used exclusively for running trains. That the right of way is unplatted land is not questioned, and by the provisions of section 1010 of the General Statutes of 1909 the special assessment was properly made on the land adjoining the improvement to the distance of 300 feet from the boulevard. This is the rule of liability prescribed by the law; but the statute does not prescribe the extent or amount of the liability. There is no contention but that the entire right of way assessed lies within 300 feet of the boulevard, but a part of the right of way is not immediately adjoining the boulevard. The right of way, however, consists of one entire tract, and is therefore assessable for the improvement. See *Railroad Co. v. Abilene,* 78 Kan. 820, 98 Pac. 224, where it was said:

"The fundamental fact upon which the validity of special assessments rests is an increment of benefit to the property taxed resulting from the improvement." (Syl. ¶ 2.)

By the provisions of section 1010, *supra,* it is clearly implied that property within 300 feet of the improvement is especially benefited, and there was no attempt on the part of appellant to show that its land was not benefited, except only that the land was its railroad right of way, was used only for running its trains, and was fenced off entirely from the boulevard. This might tend to prove that the land was not benefited so long as it is kept for and only as a right of way for the running of trains, but fails to show that it would not

be benefited in case of change of condition. The first section of the syllabus in *A. T. & S. F. Rld. Co. v. Peterson,* 5 Kan. App. 103, 48 Pac. 877, reads:

"Lands owned by a railroad company and used for its depot, warehouse, roundhouse and shops, situated within a city of the second class, are liable to assessments for local improvements as other lands are."

The fact that appellant's land was not at the time used for the purpose indicated in the above quotation does not refute the implied assumption in the statute that the improvement resulted in an increment of value to the land. No question of foot rule as to the amount of the assessment is involved in this case. The assessment was made upon the appraised value of the land per acre.

Again, it is contended that this assessment is illegal for the reason that the evidence shows that the appraisers made a mistake in the acreage of appellant's land, and consequently fixed the appraised value at more than twice the amount they intended to appraise it. On the other hand, it is contended, if there was such a mistake, to entitle the appellant to any remedy it must pay the portion of the assessment which was legal before it is entitled to maintain the action, citing *City of Lawrence v. Killam,* 11 Kan. 499. That case, like this, was an injunction proceeding relating to the collection of taxes. It is distinguished, however, from this case by the first sentence of the first section of the syllabus, which reads:

"Equity will not interfere to restrain by injunction the collection of taxes when the property is subject to taxation, the tax legal, and *the valuation not excessive,* simply because of irregularities in the tax proceedings."

In this case the ground for the injunction is that the valuation was excessive.

The answer to the claim of appellee, that appellant should have paid the correct amount of the assessment before proceeding to enjoin the whole assessment, is

that appellant contended that none of its land, or at most only a part thereof, was assessable, and also that the entire acreage of its land was much less than the amount assessed. It had the right to have each of these questions determined. The effect of the decision is adverse to appellant upon each of its contentions. Injunction is an equitable remedy and is appropriate in this case. As said in *Holmes v. Holt*, 90 Kan. 774, 136 Pac. 246:

"When a court of equity acquires jurisdiction of an action brought to determine whether certain conveyances are, in fact, mortgages, although purporting to be deeds, it will retain jurisdiction for the purpose of adjudicating all differences between the parties growing out of the transaction." (Syl. ¶ 1.)

(See, also, 22 Cyc. 790.)

As to the acreage of appellant's land, it produced one Merrich, who testified that he was a civil engineer for the appellant for twenty-five years; that within that time he had made surveys of appellant's land in the location known as Muncie boulevard, east of Eighteenth street; that he was familiar with the land owned by it, and especially its right of way between Twelfth and Eighteenth streets; that he had made survey of appellant's right of way, within the last week or ten days, between Twelfth and Eighteenth streets; also, that the tract constituting the appellant's right of way contained 3.04 acres.

The appellees made proof of the enactment of the necessary ordinances, appointment of appraisers, and other preliminary proceedings, as to which there is no controversy.

The appraisers' report of the appellant's land was introduced in evidence, and is as follows:

"Land No. 3. Beginning at the intersection of the east line of Twelfth street produced with the north line of the right-of-way of the Union Pacific R. R.; thence south to the south line of said right-of-way; thence westerly along said right-of-way to the east line

of the West ½ of the S. W. ¼ of Sec. 16, T. 11, R. 25.; thence north to the north line of said right-of-way; thence easterly along said right-of-way to beginning. Value $27,900. $1915.65."

[In pencil, "6.2a."]

T. J. Magee, one of the appraisers, testified that he estimated by the acre in appraising the land while on the ground, and the acreage was figured afterward. Being shown the figures "6.2a" on the report, said he could not say whether that was the acreage they figured on, and did not know who put the pencil notation on the report.

George McGrew, another of the appraisers, thinks the figures on the report are Mr. Caldwell's; thinks Caldwell figured the acreage; that is his best recollection, the land was valued (appraised) at $4500 to $5000 per acre—not as high as $9000 per acre.

Mr. Caldwell, the other appraiser, did not testify. No one testified that there is 6.2 acres in appellant's tract of land, or that it was so estimated by the appraisers. Yet the fact that 6.2 times $4500 is $27,900, the value placed at the bottom of the report, indicates that the figures "6.2a" was considered as the acreage. It does not, however, tend to prove that it is the true acreage of appellant's tract. There is then no evidence, unless it be the notation on the report, conflicting with that of the surveyor, and his evidence should be taken as true.

It seems evident that a mistake was made by the appraisers and that equity demands a correction thereof.

The judgment is modified as follows: The assessment is to be computed on 3.04 acres, instead of 6.2 acres, at the same rate and appraised value per acre as before, and so modified in amount is affirmed.