## GWILLIAM et al. v. OGDEN CITY.

No. 2981.   Decided March 27, 1917.   Rehearing Denied May 5, 1917.
(164 Pac. 1022.)

1. MUNICIPAL CORPORATIONS—IMPROVEMENT ASSESSMENTS—NOTICE. In view of Comp. Laws 1907, Sec. 273, providing for notice of an intention to levy improvement taxes which shall state the purposes for which the taxes are to be levied, and describe the improvements, and that the city council shall acquire jurisdiction to order such improvements in the absence of written objections by the owners of two-thirds of the front feet abutting on the portion of the street to be improved, a notice of an intention to create a certain curb and gutter district and to "build therein concrete curbs and gutters" and to do "the necessary grading therefor" was not notice of an intention to change the grade of the whole street, and, as such notice of intention was jurisdictional, the tax assessed for lowering the grade of the entire street was invalid. (Page 559.)

2. MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENTS — COLLATERAL ATTACK. While an improvement assessment cannot be collaterally assailed in equity for mere irregularity, where the publication of notice of intention to make such improvement is jurisdictional and the city publishing such notice does not comply with the requirements of the law and for that reason does not acquire jurisdiction to order the improvements and levy the assessment upon property, such assessment may be collaterally assailed at any time.[1]   (Page 562.)

3. MUNICIPAL CORPORATIONS—IMPROVEMENT ASSESSMENTS—PARTIAL INVALIDITY—REMEDY.   In an action to enjoin the collection of

[1] *Jones* v. *Foulger*, 46 Utah 419, 150 Pac. 933; *Stott* v. *Salt Lake City*, 47 Utah 113, 151 Pac. 988; *Branting* v. *Salt Lake City*, 47 Utah 296, 153 Pac. 995.

an improvement assessment, a court of equity will restrain the city only from enforcing the invalid portion of the tax. (Page 564.)

4. APPEAL AND ERROR—DISPOSITION OF CAUSE. In a suit to enjoin the collection of an improvement assessment in which the trial court refused all relief, and it appears that only a portion of the tax was valid, and the record does not sufficiently show on appeal what portion of the tax is valid, the appellate court on reversing the case will not order new trial, but will remand to ascertain the extent to which the tax is invalid and should be enjoined. (Page 565.)

5. APPEAL AND ERROR—RESERVATION OF GROUNDS FOR REVIEW. In an action to enjoin the collection of an improvement tax, where the city did not appeal from a portion of the judgment holding void the tax assessed in excess of the contract price, and no cross-error is assigned with respect thereto, the correctness of the ruling on that point is not before the appellate court for review. (Page 565.)

Appeal from District Court, Second District; *Hon. N. J. Harris*, judge.

Suit to enjoin the collection of a special improvement tax by Henry W. Gwilliam and others against Ogden City.

Judgment holding special assessment legal and denying prayer for injunction. Plaintiffs appeal.

REVERSED and remanded, with directions.

*Arthur E. Pratt* and *Geo. Halverson* for appellant.

*E. T. Hulaniski* and *J. C. Littlefield* for respondent.

## APPELLANTS' POINTS.

"While the judicial decisions differ somewhat concerning certain details in the description of the proposed improvement, resulting from construction of laws more or less variant, they are reasonably uniform in sustaining the sound and salutary position that the improvement should be described in such a manner that an interested property owner may judge with reasonable certainty the effect it will have on his property. Obviously, property owners who will have to pay the cost of

the improvement, or else have their property sold to satisfy the same, should be apprised in the notice of the character and extent of the improvement." (McQuillin, Municipal Corporations, Vol. 4, page 3980.)

In the case of *Jones* v. *Foulger*, 46 Utah 419, 150 Pac. 933, this court held the notice of intention jurisdictional.

See also *Stott* v. *Salt Lake City*, 47 Utah 113, 151 Pac. 988; *Branting* v. *Salt Lake City*, 47 Utah 296, 153 Pac. 995.

Upon the trial of the case in the lower court it was contended by counsel for the city that the plaintiffs could not complain in the form of action adopted by them; in other words, that the tax should not be declared void in consequence of any error or irregularity committed or appearing in any of the proceedings relating to this improvement, and Section 264, C. L. 1907, was referred to; and furthermore that plaintiffs had an adequate remedy at law under that section and also under Section 282. If this were the case of a mere irregularity, those sections would apply, but this court has already held in a number of cases that those sections are not applicable to the failure of the council to take jurisdictional steps required by law, which are conditions precedent to the validity of the tax. It is so held in the following cases:

*Armstrong* v. *Ogden City*, 12 Utah 476; *Mercur Mining Company* v. *Spry*, 16 Utah 222; 4 McQuillin on Municipal Corporations, Section 2004; 5 McQuillin on Municipal Corporations, Section 2127.

## RESPONDENT'S POINTS.

The city's "authority must be strictly pursued. But it must, also, in order to be enabled to perform its agency to advantage, be allowed to make the assessment, and even the collection of it shall be deemed proper, in advance. The assessment must, of course, be made upon an estimate which may be more or less incorrect, as all estimates for public works are likely to be, but the liability to error ought not to defeat a special any more than a general levy for future purposes. If it prove too large it is not fatal, though the excess properly belongs to the lot owners, who would be entitled to have it returned to them." Cooley on Taxation, 2d Ed., 665.

"Items of cost improperly included may be deducted in proceedings to set the assessment aside and the balance sustained." (*Matter of Met. Gas Light Co.*, 85 N. Y. 526; Note Cooley on Taxation, 2d Ed., 665; *In re Merriam*, 84 N. Y. 596 *id.*)

"An assessment should be limited to the actual cost of the improvements; but this may properly include all incidentals, such as the cost of advertising, engineering, superintendence, etc." Cooley on Taxation, 2d Ed., 664.

"Where in a suit to enjoin the collection of an assessment, equitable jurisdiction has been acquired, all pertinent controversies between the parties should be adjudicated." (*Un. Pac. Co.* v. *Kaney*, 141 Pac. 302, 92 Kans. 487.)

"The owner of property cannot enjoin enforcement of a total assessment for municipal improvement where it is clear that he ought to pay a part and it can be seen what that part is." *Jones* v. *Whittaker*, 33 Okl. 13, 124 Pac. 312.

"The inclusion of illegal items in an assessment for public improvement does not render the entire assessment void, where the illegal charges may be segregated from the legal." *Hildreth* v. *City of Longmont*, 47 Colorado 79, 105 Pac. 107.

FRICK, C. J.

Henry W. Gwilliam, Samuel T. Whitaker, Cora Perrins, Nannie M. Lowe, Eliza W. Cohn, Mary De Julien, Mattie L. Smith, Thomas G. Phillips, Martha T. Oborn, and Aaron Jackson commenced this action in equity in the District Court of Weber County to enjoin the defendant, Ogden City, from collecting a special tax which was assessed upon their property to defray the cost of a special improvement, which tax, plaintiffs alleged, is illegal and void. It is not necessary to refer to the pleadings. The District Court held the special assessment legal and denied the prayer for an injunction. Plaintiffs appeal.

The improvement in question was undertaken by Ogden City under the authority conferred upon the cities of this state by Comp. Laws 1907, Section 273, which reads as follows:

"In all cases before the levy of any taxes for improvements

provided for in this chapter, the city council shall give notice of intention to levy said taxes, naming the purposes for which the taxes are to be levied, which notice shall be published at least twenty days in a newspaper published within such city. Such notice shall describe the improvements so proposed, the boundaries of the district to be affected or benefited by such improvements, the estimated cost of such improvements, and designate a time when the council will consider the proposed levy. If, at or before the time so fixed, written objections to such improvements signed by the owners of two-thirds of the front feet abutting upon that portion of the street, lane, avenue, or alley to be so improved, be not filed with the recorder, the council shall be deemed to have acquired jurisdiction to order the making of such improvements.''

In compliance with the provisions of that section the city published its notice of intention to make the improvement in question, which notice, so far as material here, reads as follows:

''Notice is hereby given by the board of commissioners of Ogden City of the intention of said board to make the following described improvements, to wit: To create that portion of both sides of [naming a number of streets, including the street in question] where curbs and gutters are not now built, as a curb and gutter district, and to build therein concrete curbs and gutters of the standard form adopted by Ogden City, together with the necessary grading therefor, and to defray the whole of the cost thereof, estimated at $18,183, by a local assessment upon the lots or pieces of ground lying and being within the boundaries of the following district, being the district to be benefited and affected by the said improvements, viz. *  *  *

''All protests and objections to the carrying out of such intention must be presented in writing to the city recorder on or before the 9th day of September, 1912, at 8 o'clock p. m., that being the time set by said board of commissioners when they will hear and consider such objections as may be made thereto at the commissioner's chambers, at the city hall, Ogden, Utah.

"By order of the board of commissioners of Ogden City, Utah."

The requisite number of objections not having been made as provided in Section 273, *supra*, the commissioners of Ogden City ordered the improvement to be made and in pursuance of such order published the following advertisement for bids, to wit:

"Sealed proposals for furnishing materials and doing the work of building concrete curbs and gutters in curb and gutter district No. 108, being [naming a number of streets, including the street in question] (where curbs and gutters are not now built), under plans and specifications prepared by the city engineer and approved by the city board of commissioners, will be received at the office of the city engineer in the city hall at Ogden City aforesaid, until 10 o'clock a. m. on the 9th day of October, A. D. 1912, at which time all proposals received will be publicly opened and read aloud.

"Plans and specifications can be obtained upon application at the office of the city engineer.

"The right is reserved to reject any and all bids, and to waive any defects.

"By order of the board of commissioners."

A satisfactory bid having been obtained, the city commissioners let the contract for the proposed improvement.

In advertising for bids for the proposed improvement the advertisement was limited to the building of concrete curbs and gutters. In letting the contract, however, and in doing the work in front of the property of the plaintiffs, the street grade was lowered for a distance of more than 1,000 feet, so that the grade of said street was lowered from a depth of two inches at one end of the block on which the property of plaintiffs is situated, and which depth was gradually increased until in the center of the block the grade of the street was lowered slightly in excess of one foot, and from thence on again decreased until it reached the other end of the block, at which point the grade was lowered only about two inches, as at the beginning. It will thus be observed that, while the city published a notice of intention to create a certain district for curbing and guttering and to build concrete curbs and gutters

therein, and while it advertised for bids to build "concrete curbs and gutters," it nevertheless lowered the grade of the entire width of the street in front of the property of plaintiffs to the depth aforesaid and for a distance of more than 1,000 feet, and assessed the cost of lowering the grade as aforesaid upon the property of the plaintiffs.

Plaintiffs contend that the city was not authorized to do the lowering of the grade of the street and to assess the cost of doing that work upon their property in view of the fact that in the notice of intention published by the city it had only expressed the intention of creating a certain curb and gutter district, and "to build therein concrete curbs and gutters of the standard form adopted by Ogden City, together with the necessary grading therefor." It is insisted that the purpose, and the only purpose, indicated by the notice of intention was the building of concrete curbs and gutters and for doing the necessary grading to construct them. By referring to Section 273, *supra*, it will be seen that "the purposes for which the taxes are to be levied" must be stated in the notice of intention, and, further, that said notice "shall describe the improvements so proposed." Now, the purpose of the tax in question, as it is stated in the notice of intention, was to build certain concrete curbs and gutters within a certain district, and the proposed improvement, as stated in the notice, consisted of said "concrete curbs and gutters * * * together with the necessary grading therefor." That was the notice that was given to the abutting property owners. They were thus advised that all the city proposed to do was to create a certain curb and gutter district and to "build therein concrete curbs and gutters," and to do "the necessary grading therefor." The abutting property owners whose property would thus be affected by the improvement, might have been quite willing to have the improvement made as stated in the notice, and therefore may have made no protest, as they might have done, under Section 273, *supra*. Again, in the advertisement for bids published by the city no intimation was given that it would depart from the notice of intention as published in making the proposed improvement. The property owners may thus again have been induced not to protest, while, if

they had been informed that the street grade was also to be lowered, they might have offered timely objection to doing that part of the work. It is quite clear, therefore, that the city published a notice of intention wherein it proposed to make a particular kind of improvement and to assess the cost thereof upon the abutting property, while it in fact made additional improvements and, at a much greater cost, of which no notice of intention had been published as required by Section 273, *supra*, and it thus gave the property owners no opportunity to protest or object.

The law is well settled that, if what the city does merely amounts to an irregularity, either in publishing notice, or in letting contracts, or in their execution, etc., the 2 assessment or tax imposed to defray the cost of the improvement cannot be collaterally assailed in equity or otherwise. If, however, what the city does or omits to do affects its power or jurisdiction to make the proposed improvement, that is, if the publication of the notice is jurisdictional, and the city in publishing said notice does not comply with the requirements of the law, and, for that reason, does not acquire jurisdiction to order or to make the proposed improvement and to levy the special tax to defray the cost thereof upon the abutting property, then the tax may be collaterally assailed at any time. *Jones* v. *Foulger*, 46 Utah 419, 150 Pac. 933; *Stott* v. *Salt Lake City*, 47 Utah 113, 151 Pac. 988; *Branting* v. *Salt Lake City*, 47 Utah 296, 153 Pac. 995; 4 McQuillin Mun. Corp. Section 2004; 5 McQuillin, Mun. Corp. Section 2010; Hamilton, Law of Special Assessments, Section 788. In all the foregoing cases this court held that the things required of the city by Section 273, *supra*, are jurisdictional, and unless they are complied with with reasonable strictness the city authorities are without power or jurisdiction to impose a special assessment or tax to defray the cost of the proposed improvement. In the last two cases cited, however, it was also held that the matters there complained of merely constituted irregularities which did not affect the jurisdiction of the city to make the special assessment or to levy the special tax there in question. The case at bar, in so far as it relates to the lowering of the street grade, comes squarely within the

doctrine announced in *Jones* v. *Foulger, supra,* where it is held that the defect in the notice of intention in question in that case was jurisdictional, and hence the tax there in question was illegal.

So far as the work of lowering the street in question in this case is concerned, that stands the same as if no notice of intention had been given. The District Court therefore clearly erred in holding that the phrase in the notice of intention, to wit, "together with the necessary grading therefor," was sufficient to authorize the city to lower the street grade as was done. In construing the notice as did the District Court we must do violence to every cardinal canon of construction. The phrase "together with the necessary grading therefor" could only refer and be applied to something that had preceded that phrase. What was said in the notice of intention, and to which the phrase referred, was that the building of "concrete curbs and gutters" and the grading mentioned in the notice was necessarily limited to such as was necessary to build the concrete curbs and gutters mentioned in the notice, and not to the grading or lowering of the street grade, or to any part thereof, except where the curbs and gutters were to be constructed. The notice of intention, therefore, was defective in two essentials: (1) In not correctly "naming the purposes for which the taxes are to be levied"; and (2) in not describing the proposed improvement that was contemplated in lowering the street grade and to defray the cost of which the tax in question was assessed upon the property of plaintiffs. A mere cursory reading of the two cases of *Stott* v. *Salt Lake City* and *Branting* v. *Salt Lake City, supra,* will disclose that there is a very marked difference between those two cases and the one at bar. In those cases it was in effect conceded that proper notice of intention had been published by the city. The city therefore had acquired jurisdiction or authority to order the improvement and to levy the tax. Such was, however, not the case here. Here, as in the case of *Jones* v. *Foulger, supra,* the notice of intention was so defective as not to confer jurisdiction upon the city to impose a tax for the cost of lowering the street grade.

Counsel for the city, however, in effect contend that, al-

though it should be held that a portion of the tax is void, yet if any part of the tax is valid, and the portion which is valid can be determined and be segregated from the portion which is held invalid, then a court of equity will enjoin only the portion which is invalid and permit the city to enforce that portion which is valid. By referring to the notice of intention it is made clear that the city exceeded its jurisdiction only in lowering the grade of the street, and not in constructing the concrete curbs and gutters, and in doing the "necessary grad-ing therefor." The purpose of constructing the concrete curbs and gutters, and doing the necessary grading therefor, was properly included in the notice of intention, and the city had therefore acquired jurisdiction to order and to do that work. To that extent, therefore, the property of plaintiffs was benefited, and their counsel conceded at the hearing that the plaintiffs did not object and would not have offered any protest to the construction of the concrete curbs and gutters and the doing of the necessary grading therefor as was stated in the notice of intention. Plaintiffs thus come into a court of equity and now ask that the whole tax be enjoined for the reason that the city had exceeded its jurisdiction in lowering the grade of the street. The question therefore is: Should the city be restrained from enforcing the whole tax in question, or only that portion which represents the cost of lowering the grade of the street, which part we have held invalid?

The record as it now stands does not show what was the cost of constructing the concrete curbs and gutters, and therefore we cannot segregate the valid from the invalid portion of the tax in question. If that can be done, however, then the authorities, under statutes similar to ours, hold that a court of equity will restrain the city only from enforcing the invalid portion of the tax. The precise question involved here was decided by the Supreme Court of California in the case of *Beaudry* v. *Valdez*, 32 Cal. 269. Mr. Justice Sanderson, speaking for the court, said:

"The passage and publication of the resolution of intention are the acts by which the city council acquires jurisdiction; and by those acts they acquire jurisdiction to make only such improvements as they describe in the resolution, and they cannot, therefore,

lawfully cause work other than that which is described to be per-
formed. But if they do, it does not necessarily follow that the entire
proceedings are void. If the work described in the resolution can
be separately traced through the entire proceedings, and does not
become so mixed up with that which is not specified in the resolu-
tion as not to be distinguishable from it, the proceedings are valid
as to the former and invalid only as to the latter. In the present
case the cost of macadamizing and the cost of curbing can be·
readily distinguished and separated from each other; and we there-·
fore hold that the contract was a valid contract so far as it calls
for macadamizing, and invalid only so far as it calls for curbing.
*Emery* v. *S. F. Gas Co.*, 28 Cal. 379."

That case is followed in the case of *Dyer* v. *Scalmanini*, 69
Cal. 637, 11 Pac. 327, and is cited in the case of *City, etc., Co.*
v. *Taylor*, 138 Cal. 366, 71 Pac. 446. The same doctrine is laid
down by the Supreme Court of South Dakota in the case of
*Mason* v. *City of Sioux Falls*, 2 S. D. 640, at page 647, 51 N.
W. 770, at page 772, 39 Am. St. Rep. 802, where, at page 807,
the court said:

"But, while the property cannot be held for the cost of the curb-
ing, it may be held for the grading, when the cost of grading, inde-
pendently of the curbing, can be ascertained. In this case there
seems to be no difficulty in ascertaining the cost of the grading, as
the curbing was contracted for as a separate item."

The doctrine is also recognized in the case of *Haag* v. *Ward*,
186 Mo. 349, 85 S. W. 391, in *Union Pac. R. Co.* v. *Kansas
City*, 92 Kan. 487, 141 Pac. 302, and in *Walker* v. *District of
Columbia*, 6 Mackey (D. C.) 352.

We consider the doctrine announced in the foregoing cases
as just and reasonable. To the extent that the tax is valid
and as far as it benefited plaintiffs' property equity re-
quires that their property be held to pay the same. To        **4, 5**
the extent that the city has exceeded its authority, and
hence seeks to impose an invalid assessment and tax upon
plaintiffs' property, they should be given relief. It is not an
insurmountable objection, however, that the record does not
now show what portion of the tax is valid and what portion
invalid under the rule we have before stated. Nor is it neces-
sary that the whole case be retried. That question was also
definitely settled by the Supreme Court of California ·in the

case of *Beaudry* v. *Valdez, supra,* 32 Cal., where at page 279, in passing upon this point, it is said:

"No new trial is necessary, except so far as to ascertain what portion of the amount sued for is for macadamizing the street. This can be ascertained by referring the matter to some competent person to make the computation, for which the assessment furnishes the necessary data. When that is ascertained the plaintiff will be entitled to a judgment for that amount, and a lien upon the lots assessed, but not a judgment over."

From what has been said it follows that the District Court erred in holding that the whole tax, including that portion which was assessed to pay for lowering the street grade, was valid and enforceable. The District Court, however, also held that the city had exceeded its power in adding 10 per cent. in excess of the contract price, and of the actual cost of doing the work for superintendence, and held that part of the tax void, and restrained the city from collecting the same. In view that that part of the judgment is not appealed from and that no cross-error is assigned by the city with respect thereto, the correctness of the court's ruling on that point is not before us, and we express no opinion respecting the validity or invalidity of that portion of the tax. That portion of the tax in question which was assessed to defray the cost of lowering the street grade is therefore invalid, and the conclusion of law and judgment permitting the city to enforce that portion are hereby set aside and reversed, and the cause is remanded to the District Court of Weber County, with directions to permit the city to show, if it can, what portion of the tax in question was expended to defray the cost of lowering the grade of the street, to specifically find the amount that was so expended, and, when found, to deduct the same from the amount of the tax which remains after the 10 per cent. aforesaid has been deducted, and to enter conclusions of law and judgment restraining the city from collecting that portion and to require the plaintiffs to pay the portion remaining and which was assessed upon their property for the construction of the concrete curbs and gutters and the necessary grading therefor; appellants to recover costs.

McCARTY and CORFMAN, JJ., concur.