SYBIL W. WELD *vs.* THOMAS BROOKS.

SAME *vs.* ANDREW A. MEYER.

SAME *vs.* SAME.

SAME *vs.* GEORGE H. MUNROE.

SAME *vs.* WILLIAM GRISWOLD.

CHARLES E. WELD *vs.* ANDREW A. MEYER.

Suffolk.　March 17, 1890. — October 24, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Right of Way — Adverse User — Prescription — Interruption — Evidence of Reputation.*

An unrecorded plan, identified as that alluded to in a recorded deed, delineating a right of way which was in question, is admissible as evidence of the existence and location of the way, against a claimant under the deed, whose own deed refers to the way by the same description, but does not allude to the plan.

A deed between deceased third persons, which describes the land conveyed as bounded "by a street . . . on land" of the plaintiff's predecessor in title, is admissible as a matter of general interest in an action of trespass, as evidence of the existence and location of a public way across the premises.

A public way may be established by prescription over a private way opened by individuals.

In an action of trespass, the defendant is not held to prove an allegation of the existence of a public way extending beyond the close in question; it is enough if he proves that there was a public way where the alleged trespass was committed.

In an action of trespass, where the defence was a public right of way by prescription over a railroad, a request for an instruction that the proved or admitted acts of the railroad company in putting up fences on either side of the railroad would prevent the use of the way being continuous, was *held* to be properly refused, no such acts being admitted, and it being a question for the jury as to what acts were proved.

No exception lies to a refusal to give an instruction requested in terms, if it is given in substance.

The fact that a landowner erects a barrier across a way over his land, which is

claimed to be a public way by prescription, does not establish an interruption of the adverse use of the way, in the absence of evidence of the occasion, circumstances, or effect of the act.

On the issue of the existence of a public way by prescription, if the jury are instructed in terms, as requested by the plaintiff, that the use must be adverse under a claim of right, continuous, and uninterrupted for twenty years, and not permissive, the plaintiff cannot object that other instructions given did not allow sufficient effect to his acts as negativing acquiescence on his part.

SIX ACTIONS OF TORT. The first five cases, in which the writs were dated in May, July, and December, 1887, were for passing and repassing over the plaintiff's close, and the sixth was for an assault and battery. The cases were tried together in the Superior Court, before *Hammond*, J., who allowed a bill of exceptions, which, so far as material to the points decided, is as follows.

The close, of which the plaintiff Mrs. Weld was the owner, was situated in that part of Boston which was formerly West Roxbury, between the Boston and Providence Railroad, which at that place runs nearly north and south, on the west, and Bourne Street on the east; and was intersected by Hyde Park Avenue, a street running parallel with the railroad, and by Stony Brook. The question at the trial was whether a way over the land of Mrs. Weld, along which the defendants passed, was at the time of the alleged trespasses, as contended by all the defendants, a public way by prescription, or whether it was, as claimed by all of them save Brooks, a private way appurtenant to an estate on Bourne Street belonging to Meyer. This way ran from Bourne Street in a southwesterly direction diagonally over the close of Mrs. Weld, crossing Stony Brook by a bridge and the railroad, to a station on the latter called Mount Hope, and thence beyond the railroad to Roslindale, or to Taft's tavern in Roslindale. That part of the close which lay to the east of Hyde Park Avenue, as well as a portion of that lying between the avenue and the railroad, was originally part of a larger tract. This tract belonged to Ebenezer Weld, from a period earlier than 1827 up to 1858, with the exception after 1834 of the strip then taken for the railroad location. After his death in 1858, this tract was divided among his children, and his son, John Weld, became the owner of the portions of the close above referred to, and upon his death in August,

1886, devised it with the rest of the close to his wife, the plaintiff, Sybil W. Weld.

The evidence was conflicting as to the character of the way above described, and the nature and extent of the travel over it, and also as to its location over the close in question before 1862. The defendants' evidence, which was contradicted, tended to show a use of this way, which was opened by sons of Ebenezer Weld as a private way, for over twenty years as a public way, adversely and under a claim of right, by people on foot and in carriages, in going to and from the railroad, and otherwise. A portion of the close of Mrs. Weld, lying between Hyde Park Avenue and the railroad, other than that derived from Ebenezer Weld, was conveyed to John Weld on July 16, 1868, by John M. Mayo, to whom it had been conveyed under a like description by Nathaniel Wheeler, by a deed dated December 1, 1846. Both these deeds referred to rights of way through and over the land in question which were granted by Ebenezer Weld in 1796, and the deed of Wheeler to Mayo also referred to the land conveyed as being " laid down on said Whitney's plan, dated 18th October, 1846." The defendants were permitted to introduce in evidence this deed from Wheeler to Mayo; and no exception was taken by the plaintiffs to its admission. The defendants thereupon offered a plan made by Charles Whitney, dated October 18, 1846, and never recorded, as evidence of the existence and location of the way as claimed by them. Upon this plan, which was identified by a witness as made by Whitney, and as that referred to in the deed of Wheeler to Mayo, was delineated a way over the land in question where the defendants claimed the way used by them existed. This plan, against the plaintiffs' objection, was admitted in evidence; and the plaintiffs excepted.

The defendants produced an attested copy of a deed, dated September 25, 1860, from John M. Mayo to Charles H. Mayo, both of whom were dead, the description in which was of land shown " on a plan made by C. F. Sleeper and recorded with Norfolk County deeds," and " bounded northerly by a street leading from Bourne Street to and across the Providence Railroad, on land now or late of Ebenezer Weld." The land referred to as belonging to Ebenezer Weld formed a part of the

close of Mrs. Weld, and was the same as that described in one of
her writs, being that portion which lay to the east of Hyde Park
Avenue. The defendants also produced an attested copy of
Sleeper's plan, which showed the way described in the deed as
" a street leading from Bourne Street to and across the Provi-
dence Railroad " as wholly upon this portion of her land, and
also showed a part of her land which lay between the avenue
and the railroad. The defendants were permitted, against the
plaintiffs' objection, to introduce these copies of the deed and
plan in evidence; and the plaintiffs excepted.

The plaintiffs' evidence, which was contradicted, tended to
show that in or before 1852, and since that time, there was a
fence on each side of the railroad across the way, put up by the
railroad company, which fences prevented the crossing of the
railroad at that point either on foot or in carriages; and that
persons thereafter crossed the railroad, if at all, by climbing the
fences, or by going through a small opening left in each fence,
or by walking or driving around the ends of the fences through
the fields and across the railroad.

There was evidence tending to show that, in 1867 or 1868,
John Weld, then owning the close in question, sold the right to
remove a large quantity of sand and gravel from the land east
of Hyde Park Avenue; that for this purpose a steam shovel was
put on the land, and a side railroad track was laid on ties on the
land and across this way, and trains of cars were run back and
forth over the track night and day for one or two seasons, carry-
ing away the sand and gravel. The plaintiffs contended, and
introduced evidence tending to show, that in removing the sand
and gravel the strip of land over which this way ran was exca-
vated to the depth of three or four feet below the surface of the
railroad, and back from the railroad towards Hyde Park Avenue
some thirty to fifty feet; that, as the excavation extended back
from the railroad into a hill, said side track was moved towards
Hyde Park Avenue; that the excavation and the passing of the
trains of cars loaded with gravel interrupted the free and usual
use of the way, preventing teams from crossing, and requiring
foot travellers to pass over wherever and as best they could;
and that after this work was done, the way, or the place where
it ran, was left rough and uneven, and was never repaired or put

in order for travel. The defendants contended, and introduced evidence tending to show, that the surface of the alleged way was not substantially changed by the excavation and branch track; and that the travel on the way was not substantially interrupted by these things.

There was evidence tending to show that John Weld, who died in April, 1886, about a year before his death put up a fence on the west side of Hyde Park Avenue across this way.

The plaintiffs, among other requests for instructions, asked the judge to instruct the jury as follows:

" 3. That, in order to establish a public highway by prescription or adverse use, the defendants must prove to the satisfaction of the jury that the public generally used the way, drove over it and went over it adversely under a claim of right, not permissively, uninterruptedly for a period of twenty years consecutively. The use and enjoyment of the way must have been adverse under a claim of right, continuous and uninterrupted for twenty years. The use must not have been in any way permissive.

" 4. If John Weld, the husband of the plaintiff, or his father, Ebenezer Weld, who owned the land from Bourne Street to the railroad and beyond, laid out, opened, or built this way from Bourne Street to the railroad for their use and convenience, or for the benefit of their lands, and left it open, and if persons who have occasion to go that way or the public generally use or pass over such way because it is so left open, then all such use by the public generally, or by any persons who have occasion to pass over the same, is not adverse, but permissive, and however long continued will not make it a public way; and the public will acquire no rights as against the owners of the land in such way by such use; such use of a way so left open is considered incident thereto, and not adverse, but permissive.

" 5. The way alleged or claimed by the defendants extends from Bourne Street to Roslindale, or Taft's tavern in Roslindale. A way in order to be gained by adverse use or prescription must be a definite one, ' with an *a quo* and an *ad quem*,' and must be in a definite line, and must be proved as alleged or laid; and if such alleged way extends across the lands of different owners, it must be proved as alleged. The way being an

entirety, an interruption in any part or place in the way is an interruption of the whole.

" 6. The proved or admitted acts of the railroad company in putting up fences on one side or the other, or both sides, of the railroad and across the alleged way, would be or constitute interruptions of the way, and prevent the alleged use of the way being continuous.

" 7. If the jury are satisfied that in 1867 or 1868, by some agreement or arrangement with or consent of John Weld, the bed or soil of this alleged way on the easterly side of the railroad was dug up or excavated to the depth of three to five feet below the level of the bed of the railroad, in the manner testified to by some of the witnesses, and that railroad tracks were laid upon his land and across this way, and gravel trains run over the same for the time and in the manner testified to by some of the witnesses, these acts would constitute interruptions of the use of the way. Such acts done by the consent of the owner of the soil are inconsistent with the existence of a right of way or use of a way over the place. They are acts of ownership and control over the place where the way is, wholly inconsistent with the existence of a right of way in the public or in individuals.

" 8. If the jury are satisfied that John Weld, who died in April, 1886, in his lifetime put up a fence or barrier across this alleged way on Hyde Park Avenue, such act would constitute an interruption of the use of the way."

The judge, who gave the third instruction requested, but refused to give the fourth, fifth, sixth, and seventh requests, instructed the jury, among other things, as follows: " When the question comes as to whether the public have acquired a right of way by prescription over land where people have also gone in the exercise of a private right, you are to take into consideration the general situation of the road, the uses that are made of it, and say whether the use made of it by the public is merely incidental and insignificant compared with that which is made of it by those who have private rights or otherwise. If it is merely insignificant, incidental to the rights exercised by those having a private right to go there, you would not be justified in finding that the public by prescription have made a public road of it by so travelling. If, however, the public travel is so far greater

than the private travel as to satisfy you that the public travel is
the main thing, and not incidental to the private rights, then
you may be justified in finding it a public road. . . . The travel
must be adverse and under a claim of right. If you find that
the landowner knew, or might have known, that the public were
so using that road in a manner not incidental merely to the
private travel, and he silently acquiesced or made no effort to
stop it or interrupt it, you would be justified in finding it was
adverse to his rights, notwithstanding the fact that there were
private rights also there." The judge gave the eighth request
by adding after the words "Hyde Park Avenue" the words "so
as to prevent travel," and by adding at the end the words "but
does not divest acquired rights acquired by prescription"; and
further instructed the jury in respect to said prayer, that, "if
you are satisfied that Weld put up a barrier at the Hyde Park
end of this avenue so that they could not get on to the space
between Hyde Park Avenue and the railroad so as to prevent
travel there, that would be an interruption."

The judge also instructed the jury : " The plaintiffs contend
that the railroad corporation placed a fence upon the westerly
side of the railroad, and that that fence was an interruption so
as to prevent the twenty years' adverse use running. If the
fence was an interruption to the travel of the public over this
spot where the trouble occurred, you should so consider it. If,
however, you find that, notwithstanding that fence was there,
still the public used the portion of the road which is in contro-
versy for the purpose of going to the railroad as far as the fence,
then, notwithstanding the existence of the fence, you would be
justified in finding that the travel to the fence was a part of the
continuous travel which the public are obliged to show in order
to establish the right of way by prescription. . . . If you find it
did have the effect of making the public cease to go from Hyde
Park Avenue towards the railroad on this street, then the travel
is no longer continuous and uninterrupted. So, to a certain ex-
tent, of the interruption by the gravel train. . . . In the first
place, you will have to make up your minds as to what were the
physical changes on the surface of the road, to see how far the
gravel tracks went below or above the grade of the old travelled
road; and if, notwithstanding the tracks, carriages and people

did go over as theretofore, and if you find that, notwithstanding the gravel tracks and the running of the trains, there was travel over there as there had been before by the public, then I instruct you that you are justified in finding that the gravel track and the train were no such obstruction to the public travel as would prevent the public from acquiring the right to go over there by prescription. If, however, you find that the gravel track and the running of the trains interfered with that road in such a way as that the public did not go over it as they had theretofore gone, — did not go over it at all, — that there was a substantial interruption of the travel, — you will then find that the travel was interrupted, and such an interruption would prevent the acquiring of an easement." The judge also instructed the jury as to the alleged private right of way over the way in question.

The jury returned a verdict for the defendant in each case; and the plaintiffs alleged exceptions.

*C. G. Keyes*, for the plaintiffs.

*J. E. Cotter & C. F. Jenney*, for the defendants.

W. ALLEN, J. The questions whether a way which existed over the plaintiffs' lands was a public way by prescription, and whether it was a private way appurtenant to land of the defendant Meyer, were tried together. The jury found that it was a public way.

1. Exception was taken to the admission of a plan referred to in the deed from Nathaniel Wheeler to John M. Mayo, dated December 1, 1846. No exception was taken to the admission of the deed. The plan was not recorded, but was sufficiently identified. The land conveyed included part of the close in question, and Mrs. Weld claimed under the deed, through John Weld, her husband and devisor, to whom Mayo conveyed in 1868 by a deed, containing the same description of land and right of way as in Wheeler's deed, but not referring to the plan, and the plaintiffs put the deed in evidence. We think that the plan, as well as the deed, was admissible as evidence of the existence and location of the way.

2. The defendants offered an attested copy of a deed from John M. Mayo and wife to Charles M. Mayo, dated in 1860, and an attested copy of the plan named in and recorded with

the deed. The parties to the deed are not living. The land conveyed is described as bounded "northerly by a street leading from Bourne Street to and across the Providence Railroad, on land now or late of Ebenezer Weld." Said land of Ebenezer Weld, who was the father of said John Weld, is the close described in one of the plaintiffs' writs, and the location of the way over that land prior to 1862, as well as the nature of the way, was in dispute. It is objected that the deed is between third parties, and is mere hearsay and reputation. Without considering whether the evidence would be competent to prove the location of a private way, we think it was competent upon the question of the existence and location of a public way, as a matter of public and general interest upon which reputation is admissible. 1 Greenl. Ev. §§ 128, 139; 2 Best, Ev. (Am. ed.) § 497.

3. The fourth prayer for instructions was properly refused. A way may be used by the public as a public way, although it was opened by individuals as a private way. The instructions given as to what will constitute an adverse public use of a private way, were full and unobjectionable.

4. The fifth prayer for instructions was properly refused. The defendants were not bound by any allegation or claim of a public way. It was enough if they proved that there was a public way where the alleged trespasses were committed.

5. The sixth prayer for instructions, that the proved or admitted acts of the railroad company in putting up fences on each side of the railroad would prevent the use of the way being continuous, was properly refused. No such acts of the railroad company were admitted, and it was for the jury to say what acts were proved. Full and correct instructions were given in regard to the effect of such obstructions as the jury might find to have been made at the railroad.

6. There was evidence that John Weld, the plaintiff's predecessor in title, sold gravel from the land near the railroad, described in the plaintiff's writs, and that a branch track was laid from the railroad over the way for the purpose of removing the gravel. The evidence in regard to the extent of the obstruction thereby caused to the way was conflicting. Some witnesses testified that the way was excavated and made impassable by

carriages, and others that there was no substantial change in the way, or interruption to the travel. The seventh prayer for instructions was to the effect that, if the way was excavated and obstructed as testified to by some of the witnesses, such acts would constitute interruptions of the use of the way. While the court very properly declined to adopt the words of this prayer, it gave it in substance when it instructed the jury that if they found that there was a substantial interruption of the travel, that would be an interruption of the use ; and the instruction that, if the jury found that carriages and people did go over the way as before, and that there was travel over there by the public as before, they might find that the obstruction was not an interruption to the public use, was not inconsistent with the defendant's prayer.

7. The mere fact that John Weld, then owner of the land, put a fence, or barrier, across the way, with no evidence of the occasion or circumstances or effect of the act, would not, as matter of law, constitute an interruption of the use of the way, and the eighth prayer for instructions ought not to have been given without modification, and the modification made by the court by adding the words " so as to prevent travel," seems proper.

The plaintiffs object, that the court, in its instructions, did not allow sufficient effect to the acts of the landowners as negativing acquiescence on their part, and argue that an act of the servient owner asserting his right, though not interfering with the actual use by the public, would work an interruption of that use. The general instruction that the use must be by the public, adverse, and under a claim of right, and not permissive, and must be continuous and uninterrupted, was given in the words of the plaintiffs' third prayer for instructions. This involves the proposition, that, if the landowner does no act which breaks the continuity of the public user, his acquiescence, so far as it is necessary to be shown, will be implied.

The other questions presented in the exceptions relate to a private way, and seem to have been rendered immaterial by the verdict.

*Exceptions overruled.*