EDMUNDS et al., Respondents, v. PLIANOS et al., Appellents

(51 N. W.2d 701)

(File No. 9226.  Opinion filed February 5, 1952)

Rehearing denied February 18, 1952

**John E. Walsh, James T. Goetz,** and **W. W. French,** all of Yankton, for Plaintiffs and Respondents.

**Slaughter & Brady,** Yankton, **Everett A. Bogue,** Vermillion, for Defendants and Appellants.

SICKEL, P. J.   Plaintiffs contend that the area described as the south 12 feet of Lot 7, Block 3, Lower Yankton, is a public alley, and ask that defendants be permanently enjoined and restrained from obstructing or interfering with their use of it.   Defendant Plianos denies such claim and alleges that the area is his private property.   Defendant Anderson disclaims any interest in the area.   The circuit court entered judgment for plaintiffs and defendant Plianos appealed.

Block 3 has an alley 20 feet wide running north and south through the center.   It is bounded on the south by Third Street, and on the west by Douglas Avenue.   Each half of the block is divided into nine lots 44 feet by 150 feet.   Lot 9 in the southwest corner of the block has a frontage of 150 feet on Third Street, and a frontage of 44 feet on Douglas Avenue.   Lot 8 is north of Lot 9.   The plat of this block was filed in 1865.   In 1873 Walter A. Burleigh, the owner, conveyed to Mary Balmat the east half of the west third of Lots 8 and 9.   The remainder of the two lots was similarly divided and conveyed to others, obviously for the purpose of providing frontage on Third Street which had developed into the principal business street of the city.   Lot 7 formed the north boundary of Lot 8.   Burleigh retained the title to the south 12 feet of Lot 7 until 1882 when he conveyed it to Charlotte Faulk, who in turn conveyed it to Josie T. Balmat in 1900.   The latter conveyed that 12-foot strip to John Henry Balmat in 1902 and he conveyed it to Josie T. Balmat, his wife, in 1922.   Thereafter Josie T. Balmat conveyed the 12-foot strip together with the irregular tract in Lots 8 and 9, referred to above, to various relatives in consideration of love and affection.   A. D. Sorenson gathered the title to this strip from various owners and conveyed

it, with the east half of the west third of Lots 8 and 9, referred to above, to defendant Plianos who now proposes to withdraw the strip from public use by virtue of his record title.

Appellants contends that: "The assignments of error raised but one major question, namely, whether or not the plaintiffs and the public have gained a prescriptive right for purpose of public travel over the 12-foot strip of ground in question because of the acts or conduct of the defendant or his predecessors in interest, or because of their failure to act". The questions presented are: 1. Does the evidence show an intent on the part of the owners of the 12-foot strip to dedicate it for public use as an alley? 2. If so was the intended dedication accepted by the public? Mason v. City of Sioux Falls, 2 S. D. 640, 51 N.W. 770; Larson v. Chicago, M. & St. P. Ry. Co., 19 S. D. 284, 103 N.W. 35; City of Watertown v Troeh, 25 S. D. 21, 125 N.W. 501; Evans v City of Brookings, 41 S. D. 225, 170 N.W. 133; First Church of Christ, Scientist v. Revell, 68 S. D. 377, 2 N.W.2d 674; Lacey v. Judge, 68 S. D. 394, 3 N.W.2d 115; Stannus v. Heiserman, 72 S. D. 567, 38 N.W.2d 130, 131.

In the case of Mason v. City of Sioux Falls, supra, [2 S. D. 640, 51 N.W. 773.] this court considered a case parallel to this one on the facts. There the owner of a tract of land platted it into lots and blocks in 1881, but no streets were laid out on the plat. The owner conveyed part of the land not platted, by metes and bounds so as to leave a strip of land 66 feet wide between the land conveyed and the land which was platted. The city passed a resolution to pave that strip as a street and to assess the property of adjacent owners for the cost. The action was brought to annul the assessment on the ground that the strip was not a public street. It was admitted that title to the strip was in McClellan but it was contended that by his acts he had dedicated to the city an easement in it for a public street. This court in its opinion by Corson, J., held: "Among the methods of acquiring the right to the use of land for a street is that of dedication by the owner, either express or implied. In an implied common-law dedication, it is necessary that there should be an appropriation of land by the owner to

public use by some act or course of conduct from which the law will imply such an intent. * * * It is true, an actual intent to dedicate the land to public use must be found to exist, but proof of user for a period much shorter than that required to show title by prescription may be sufficient to prove such intent and dedication. The extent and character of the use may furnish evidence of the intention to so dedicate". Authorities reviewed. "The leaving of a strip of land 66 feet in width by McClellan between his addition and the land of plaintiff; subdividing his westerly tier of blocks into lots facing the west; conveying a strip 66 feet in width between his two additions, in 1884; the laying out of Cooper's addition so as to leave 66 feet between that and his other propery,—all tended strongly to show that he intended that 66-foot strip for the public use. These facts, followed by the evidence offered, that the whole 66-foot strip had been used before and since 1881 as a public highway, with the knowledge of and without objection by McClellan, might have been taken by the jury to establish at least a prima facie case of a dedication". Here also the title to the strip of land in question has at all times remained in the individuals and it has never been formally dedicated to public use. The issue is also whether an intent to dedicate the land to public use may be reasonably implied from the course of conduct of the various owners. Here, the owner subdivided Lots 8 and 9 into tracts facing south, leaving the 12-foot strip in the rear connecting Douglas Avenue with the north-south alley, which tends strongly to show that the owner intended this strip for public use as an alley. It is also the undisputed fact that no one now living can remember a time when this land was ever used for anything but a public alley, presumably with the knowledge of and so far as the record shows without objection from any of the owners until now.

The decision in the Mason case was applied and followed by this court in City of Watertown v. Troeh, supra. [25 S. D. 21, 125 N.W. 502.] There the issue was whether the evidence was sufficient to justify a finding to the effect that Johnson intended to dedicate the land as a public alley and also to establish that the municipal corporation had accepted

the dedication. The land was a city block in Watertown with a platted alley through the center. The lots in the north half of the block were numbered from 1 to 14 commencing on the east at Oak Street. They extended from the public alley north to Dakota Avenue. Oak Street, the east boundary of the block, "had developed into a better business street than had Dakota avenue" so the owner subdivided Lots 1 to 5 by lines running east and west instead of north and south and conveyed them, leaving a strip 12-feet wide in the rear of the subdivided lots "for a public alley". One of the owners closed the south end of the alley claiming that the reservation in the deeds did not tend to and did not convey to the public a right of way over the strip. This court held that although the deeds may have been insufficient to convey the strip to the public yet they "clearly prove an intent on the part of Johnson to dedicate such strip for public use". "It is therefore clear that, considering the reservations in the deeds, the situation of these lots, the fact that Johnson had changed the platting, that to make this tract valuable for business purposes an alley at the rear of the tracts sold was important, that the south end of such strip would connect with the public alley, and the north connecting with a street opposite the end of another public street, there was ample to justify the jury and court in finding an intent on the part of Johnson to dedicate the strip for a public alley."

The case of City of Watertown v. Troeh, supra, also disposed of the question of acceptance by the public saying: " 'The inhabitants of a locality having by long-continued use treated the way as a public one, they make it such without the intervention of those who derive their authority from them.' * * * In this case, where there was evidence sufficient to show intent |to dedicate| even excluding all the evidence of user, and where it was shown that for some 18 or 19 years this tract had been openly used by the public, there was ample to prove an acceptance prior to the time defendant received his deed".

Here as in the City of Watertown case the land also consisted of a city block with a platted alley through the center. The lots ran parallel with Third Street which had

developed into a better business street than Douglas Avenue, and therefore the owner divided Lots 8 and 9 by lines running north and south instead of east and west as on the original plat, leaving a 12-foot strip at the rear of the lots for an alley. Here also the present owner, after the adjacent property has been improved and adapted to the use of the alley, proposes to close one-half of the alley reducing the remainder to a cul de sac. We may also say that the situation of these lots, the fact that the owners changed the frontage of the lots to make them more valuable for business purposes, and that the alley in the rear was therefore important as a means of access to the tracts so laid out, are persuasive on the question of intent to dedicate.

In the case of First Church of Christ, Scientist v. Revell, supra, it was held that the use of a driveway over church property was permissive, not adverse; that it was private, not public. The evidence failed to establish an intent by the owner to set the land apart for public use, but showed the contrary.

In Lacey v. Judge, 68 S. D. 394, 3 N.W.2d 115, it was held that the mere laying out of a strip of ground as a highway is insufficient to constitute a dedication, following First Church of Christ, Scientist v. Revell, supra.

The case of Stannus v. Heiserman, 72 S. D. 567, 38 N. W.2d 130, 131, involved a private, not a public way. The court said: "mere user will not support an inference of implied dedication" under SDC 28.0104.

The case of Evans v. City of Brookings, 41 S. D. 225, 170 N.W. 133, 134, arose over an implied dedication of a public alley and an acceptance thereof by the public. A cement crossing was built with sloping sides and corrugated surface and with the extra weight common to public crossings. This crossing was paid for by the city with the knowledge of the party who contested the contention that the alley was public. The court said: "To our mind this fact, taken with all that had preceded it, constitutes ample proof that at that time Jenkins considered this a public alley; that then, if not before, he dedicated this strip of land as a public highway; and that the city, by the use of this alleyway by its citizens,

and by thus paying for the crossing, accepted the same as a public way". The evidence in this case also shows that the walk across the Douglas Avenue entrance to the alley differs from the ordinary walk in that it is built of heavier and firmer concerte, has a corrugated surface like a vehicular crossing, with an apron of concerte leading to the street, and that it was paid for by the City of Yankton.

Plaintiffs introduced in evidence certified copies of three deeds conveying the tract which faces Third Street now owned by defendant Plianos. The first deed was executed by Mary Balmat to John H. Balmat May 3, 1879. The second deed was executed by John H. Balmat to Josie Balmat April 8, 1885. The third deed was executed by Josie Balmat to John Henry Balmat August 6, 1887. Following the description of the real estate conveyed these deeds all recite: "There being an alley on the north end of said described lot 12 feet wide". Appellant contends that these deeds do not constitute a dedication of the alley because the parties to the deeds did not then own the legal title to the alley. Respondents contend that the deeds are competent because they show that the strip of land in question was recognized by adjacent owners as an alley as early as the year 1879.

■ Evidence of common repute when it relates to land-boundaries, land-customary-rights and events of general history on some other matters, is admissible as an exception to the hearsay rule. The rule is based upon the principles of security and trustworthiness. Wigmore on Evidence, Vol. 5, § 1580, says: "(a) The necessity is here to be found in the general dearth of other satisfactory evidence of the desired fact, by reason of which we are thrown back upon reputation as a source of information. In the exceptions for land boundaries and customs this necessity is found to exist where the matter is an ancient one, and thus living witnesses are not to be had. In the exceptions for character and marriage the necessity lies in the usual difficulty of obtaining other evidence than reputation. (b) The circumstances creating a fair trustworthiness are found when the topic is such that the facts are likely to have been generally inquired about and that persons having personal knowledge

have disclosed facts which have thus been discussed in the community; and thus the community's conclusion, if any has been formed, is likely to be a trustworthy one. This, under differing conditions, is the common ground of trustworthiness for reputation on land-boundaries and customs, for events of general history, and for character and marriage. There is therefore, on the whole, a certain underlying unity of principle for all the recognized uses of reputation".

On the question of general interest the author adds the following: "The question next arises, About what sorts of matters may reputation be received as trustworthy? The principle already examined (ante, § 1583) prescribes the answer—that the matter must be in its nature one about which a trustworthy common reputation could fairly arise, i. e. about which an active, constant, and intelligent discussion by the members of a community would result in a residuum of fairly trustworthy conclusions. As a rough-and-ready test, we may thus say that the matter should be of public, or general, or public and general interest; and this is the common phrasing; though it varies thus loosely. But this is still only a rule of thumb. To decide difficult cases it is necessary still to seek the living principle, and ask anew whether the matter is of such general interest to the community that by the thorough sifting of active, constant, and intelligent discussion a fairly trustworthy reputation is likely to arise". Id. § 1586.

The case of Crease v. Barrett, 1 C.M. & R. 919, 929, 149 Eng.Reps. 1353, states what appears to be the rule in the English courts: "Where the right is really public—a claim of highway, for instance—in which all the King's subjects are interested, it seems difficult to say that there ought to be any such limitation; and we are not aware that there is any case in which it has been laid down that such exists. In a matter in which all are concerned, reputation from any one appears to be receivable; but of course it would be almost worthless unless it came from persons who are known to have some means of knowledge, as by living in the neighborhood, or frequently using the road in dispute".

McKinnon v. Bliss, 21 N. Y. 206, 212, 218, involved the title to land under a grant from the British Crown. Recitals

contained in a will and historical evidence on the matter of long continued and undisputed use was offered and considered. The court said: "* * * recitals or assertions contained in any deed or other written instrument are never evidence in favor of the party who executes the deed." The opinion further states: "But there are, no doubt, other cases in which the same kind of evidence [hearsay or reputation] may be received, for the purpose of establishing a mere private right, when the fact to be proved is one of a quasi public nature, that is, one which interests a multitude of people or an entire community * * *."

McKinnon v. Bliss, supra, was cited with approval in Gardner v. Town of Claverack, 22 N.Y.S.2d 265, in which the question before the court was the location of a post road.

A similar question was before the Supreme Court of Massachusetts in Weld v. Brooks, 152 Mass. 297, 25 N.E. 719, 720. This was an action to determine whether a way over the land of another was a public way. This was the consolidation of six actions all arising in tort. One defendant entered a close belonging to plaintiff Weld. Plaintiff's son attempted to remove defendant from the close. The defendant alleged the existence of a public way over the close by prescription. The defendant offered in evidence an attested copy of a recorded deed by John M. Mayo and wife to Charles M. Mayo, dated thirty years before the trial. In the conveyance the land was described as bounded "northerly, by a street leading from Bourne street to and across the Providence Railroad, on land now or late of Ebenezer Weld". The location of the way over that land prior to 1862 was in dispute. The court said: "Without considering whether the evidence would be competent to prove the location of a private way, we think it was competent, upon the question of the existence and location of a public way, as a matter of public and general interest, upon which reputation is admissible".

In Minor v. Fincher, 206 Ga. 721, 58 S.E.2d 389, 393, the Supreme Court of Georgia states the rule to be that: "* * * it is competent to establish boundaries by proof of traditionary reputation in the neighborhood, derived from ancient sources or from the declarations of persons since deceased who

had peculiar means of knowing the reputation as to the boundary of a tract of land in an ancient day * * *".

Ames v. Empire Star Mines Co., 17 Cal.2d 213, 110 P.2d 13, 19, involved the location of a mine on government land. The court said: "It is a well established exception to the hearsay rule that evidence of common reputation existing previous to the controversy may be introduced to prove the existence of boundaries and facts of a public or general interest more than thirty years old". The Code of Civil Procedure of California, § 1870, is an enactment of the common law on this subject, except that it contains a limitation of thirty years. The court said further in the Ames case, 110 P.2d at page 20: "* * * since these locations may be proven by evidence of general reputation previous to the controversy there is no reason why the defendants cannot introduce the History of Yuba County by Chamberlain and Wells (1879) for such a purpose".

■ Appellant is right in his contention that the recitals contained in the Balmat deeds do not constitute a dedication of the alley, but the question here is whether those deeds are competent evidence of a matter which was in common repute. Here the dearth of satisfactory evidence on the issue of ancient dedication made it proper to resort to reputation as a source of information. Trustworthiness in this instance is found in the fact that a public way is a matter of common interest and observation in the community. The declarations contained in the deeds were made by persons now dead who lived in the community, who had no claim to ownership of the alley, and whose only interest at the time was the ownership of a lot forming a part of the alley boundary. While this evidence is not conclusive, it is competent evidence of the fact of dedication, and was properly received by the court along with the other evidence in the case in determining that question.

The evidence also shows that a creamery of brick construction has been built on the north side of the strip at the rear. On the south side of the strip facing Third Street is a solid row of one and two-story structures, built for commerce and trade. These structures were built to the alley grade and were designed to take full advantage

of the use of this strip as a public alley. The city has for many years used, and still uses, the alley for collection of garbage as a public service. It has maintained the alley as a public way by filling holes with cinders and gravel, grading it, and by removing accumulations of snow which impeded the use of the alley by the public. The public service company has laid its mains in the alley, underground, for the distribution of gas to its customers, believing in good faith that the alley was a public way and that the right to use it for this purpose was theirs. The successive owners of this 12-foot strip have kept it open as a thoroughfare connecting Douglas Avenue with the platted alley in the center of the block. The conduct of the owners for over a period of seventy years amounted to a recognition of this strip as a public alley, and the conduct of the public in the use and maintenance of this strip amounted to a recognition of it as a public alley.

It is also significant that Douglas Avenue was paved with concrete in 1915 under a contract by which the city agreed to pay for the paving of all streets and alley intersections, while all other paving was to be paid for by special assessment against abutting property. In this instance the City of Yankton paid for the paving of the intersection of Douglas Avenue with the 12-foot alley, from funds belonging to the city, in recognition of the strip as a public alley.

Considering the evidence as a whole on the issues of implied dedication and acceptance by the public we conclude that the findings of the circuit court are supported by substantial evidence, and we find no clear preponderance of the evidence against those findings. The judgment is therefore affirmed.

All the Judges concur.