Hazel SMITH, Ralph Greslin and Charleen Greslin, Terry Mudder and Karen Mudder, Sidney Pulaski and Mary Ann Pulaski, David Geary, Dave Clausen and Barb Clausen, Bruce Rath, Donald Sargent and Jesse Small, Plaintiffs and Appellees,

v.

Cecil SPONHEIM, Harlan Kistler and Betty Kistler, Kenneth Atkinson, John Gapp, Eugene Albrecht, and Meade County acting By and Through its Board of County Commissioners, Defendants and Appellants.

No. 15310.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1986.

Decided Jan. 28, 1987.

A.P. Fuller, Amundson, Fuller & Delaney, Lead, for plaintiffs and appellees.

Hermon B. Walker, Rapid City, for defendants and appellants.

SABERS, Justice.

This appeal arises from a declaratory judgment action under SDCL ch. 21–24 by a group of Meade County, South Dakota residents and property owners (Smith/appellees). Smith and others requested a declaration that a road leading to their various properties had been dedicated and accepted for use as a public road, or, in the alternative, for a prescriptive easement over the property of defendants (formerly Albrecht, *now* Sponheim/appellants). The trial court entered a judgment in July 1983, which declared that a public road existed and that no prescriptive easement existed. Albrecht appealed to this court. We reversed the trial court in *Smith v. Albrecht*, 361 N.W.2d 626 (S.D.1985), on other grounds, i.e., that Meade County was an indispensable party to the action.

After Meade County (County) was joined as a party defendant, a court trial was held on November 21, 1985. The trial court entered Findings of Fact, Conclusions of Law, and a Judgment on January 29, 1986, which declared the subject roadway a public road and granted the general public unlimited rights of ingress and egress along the entire roadway. Sponheim appeals to this court. We affirm.

## Facts

The general background of this case is set forth in *Smith v. Albrecht*, 361 N.W.2d at 626–627.

The disputed Meade County road is approximately 1800 feet long and was first traveled around 1940. It remained unimproved until 1957 when the owners of the property over which the road passes removed the fences on the south side of the road and Meade County graded the east end. In 1966, the county graded the rest of the road. Although there are no easements recorded, a power line runs along the north side of the road and a buried telephone cable runs along the south side. The road has been maintained over the years in part by the property owners upon whose land the road lies, in part by the landowners' neighbors who also used the road, and periodically by Meade County. Only a few families from the community used the road until a subdivision was constructed west of the road bed. Usage increased and, according to Sponheim, the quality of life in the area decreased as the subdivision developed. Sponheim contends that increased use of the road has created problems of safety, health, vandalism, nuisance, and road deterioration.

The rising concern among the residents prompted a community meeting which was held in 1979 or 1980 to discuss: (1) the private nature of the road, (2) closing the road, and (3) the construction of a public highway. The parties approached the Meade County Commissioners who placed a moratorium on building permits in the new subdivision until a public road was constructed and opened on a common section line in 1981. All of the appellees in this action and all present and future residents of the subdivision have access to Highway 14–79 over this new public road. The new road is located 1,320 feet north of the road in issue.

## Sponheim's Claims

Sponheim raises two issues on appeal: (1) whether the evidence demonstrates the landowners' intent to relinquish and the

public's acceptance of the property for use as a public road, and (2) whether the evidence supports the conclusion that a public highway exists under SDCL 31–3–1.

1. THE EVIDENCE DEMONSTRATED THE LANDOWNERS' INTENT TO RELINQUISH AND THE PUBLIC'S ACCEPTANCE OF THE PROPERTY FOR USE AS A PUBLIC ROAD.

■ Findings of fact should not be set aside unless clearly erroneous, and due regard should be given to the trial court to judge the credibility of the witnesses. SDCL 15–6–52(a); *Brusseau v. McBride,* 245 N.W.2d 488, 491 (S.D.1976). In applying this standard, this court will not overturn the trial court's decision unless, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Wiggins v. Shewmake,* 374 N.W.2d 111, 114 (S.D.1985).

Smith does not claim an express dedication of the subject roadway. In respect to an implied dedication of streets, this court has said:

'One of the methods of acquiring the right to the use of land for a street is that of the implied dedication of the same by the owner of the fee. In an implied common-law dedication, the use of such land by the public as a street, with the knowledge of, and without objection by, the owner of the fee for a number of years, is evidence of such dedication, and from such use by the public, without objection by the owner of the fee, a jury may presume an actual dedication of such street to the public use.'

*Roche Realty & Investment Co. v. Highlands Co.,* 29 S.D. 169, 176–177, 135 N.W. 684, 685 (1912) *citing Mason v. City of Sioux Falls,* 2 S.D. 640, 648, 51 N.W. 770, 772–773 (1892).

■ Generally, no particular formality is essential to an implied dedication or acceptance of land for a public use. *Roche Realty, supra.* An actual intent to dedicate the land to public use must exist, but proof of use for a period much shorter than that required to show title by prescription may be sufficient to prove such intent and dedication. The extent and character of the use furnishes evidence of the intention to dedicate. *Edmunds v. Plianos,* 74 S.D. 260, 263, 51 N.W.2d 701, 702 (1952); *Mason, supra.* The intention to dedicate must clearly appear and may be shown by deed, words, or acts. If by acts, such as the trial court found in this case, they must be such acts as are inconsistent with any construction except the assent to dedication. *First Church of Christ, Scientist v. Revell,* 68 S.D. 377, 385, 2 N.W.2d 674, 678 (1942).

A long line of South Dakota cases on the doctrine of implied dedication of private property to public use have established that:

Conduct on the part of the owner that is clearly expressive of an intention to dedicate usually amounts to a dedication, if acted upon by the public in a manner which clearly justifies the inference of an acceptance.

*Mason, supra; Larson v. Chicago, M. & St. P. Ry. Co.,* 19 S.D. 284, 103 N.W. 35 (1905); *Roche Realty, supra; First Church,* 68 S.D. at 383, 2 N.W.2d at 677; *Stannus v. Heiserman,* 72 S.D. 567, 569, 38 N.W.2d 130 (1949); *Edmunds, supra; Brusseau,* 245 N.W.2d at 489.

To prevent the establishment of highways on public and private lands by a user, the legislature enacted Chapter 100, Laws of 1893.[1] This statute has been reenacted in successive revisions and presently appears as SDCL 31–3–2 which provides:

Notwithstanding § 31–3–1, the mere use by the public of any route of travel along or across public or private land, or the

---

1. The continued use of any road or way heretofore traveled or which shall hereafter be traveled by the public across any of the public lands belonging to the state, or across the land of any private person, or upon and parallel to the right-of-way of any railroad company in this state, shall not be deemed to have constituted such road or way a legal highway, or a charge upon the town in which the same is situated; and no rights or benefits shall inure to the public or any individual by the use thereof.

right-of-way of any railroad company for any period, shall not operate to establish a public highway and no right shall inure to the public or any person by such use thereof.

This court has held that mere use will not support an inference of implied dedication. *Roche Realty* and *First Church, supra; Lacey v. Judge,* 68 S.D. 394, 3 N.W.2d 115 (1942); *Stannus, Edmunds,* and *Brusseau, supra.* "[W]hat amounts to a dedication by implication depends upon the facts of the particular case, and no hard and fast rule can be laid down as a guide for the courts." *Evans v. City of Brookings,* 41 S.D. 225, 229, 170 N.W. 133, 134 (1918); *Stannus; Brusseau; Miller v. Scholten,* 273 N.W.2d 757, 762 (S.D.1979).

The trial court's Findings of Fact included the following:

—Since 1940, the road has been used by residents of the area and their guests which include all parties to this action and their predecessors in title.

—The road has also been used by: hunters, woodcutters, U.S. Forest Service employees, S.D. Department of Game, Fish & Park employees, as well as business people who have provided service to the residents living on the road and west of the road, and other members of the general public.

—Smith's husband performed frequent maintenance work on the road from 1951 until approximately 1977.

—In 1957, Meade County caused work to be performed by the county maintenance and road crews on a portion of the subject road which crosses property now owned by appellants Sponheim, Kistler, Atkinson, and Gapp.

—In 1957, the county widened the road, constructed a roadway ditch, and installed culverts. The county crews performed surface grading and gravel work on the road.

—In 1957, the predecessors in title to appellants Gapp, Atkinson, Sponheim, and Kistler, moved their respective roadside fences to allow Meade County to have their land to use in widening and improving the road and installing a roadway ditch on the south side of the road.

—In 1972, Meade County's highway maintenance crews performed work on the road to repair damage caused by flooding.

—From approximately January 1975, until about June 1978, the Meade County Highway Department maintained the road annually. Such maintenance included road grading and graveling work, snow removal, and maintenance of the roadway ditch by county work crews.

—In 1977, the Meade County Commission approved and accepted a plat for a new subdivision which was located west of the disputed road.

—When Meade County accepted the plat, the only public access to the subdivision was via the road.

—A Meade County Commissioner testified that the road is public and that Meade County is responsible for its maintenance and upkeep.

■ These findings are sufficient to support the judgment of an implied dedication if substantiated by the evidence. "Thus, the issue before this court is whether there is evidence to support the findings of the trial court under the clearly erroneous rule." *Brusseau,* 245 N.W.2d at 492 (Dunn, C.J., dissenting). For the reasons stated below, we hold that the trial court's findings are amply supported by the evidence.

In *Evans,* we found that the defendants had dedicated a private road to public use and the City of Brookings had accepted the dedication by expending public funds for grading, graveling, and maintaining the road. 41 S.D. at 229–231, 170 N.W. at 134. Similarly in *Edmunds,* the payment by the city for the cost of paving an intersection of a street and alley supported the finding that there had been an implied dedication of the property in question as a public alley. 74 S.D. at 269–270, 51 N.W.2d at 706.

In *Haley v. City of Rapid City*, 269 N.W.2d 398 (S.D.1978), we reiterated our adoption of the rule that acceptance of a dedication may be shown through use. *Id.* at 400. In *Haley*, we followed the ruling in *Evans, supra,* and held:

> Notwithstanding the fact that the public has not used the disputed portion of the alley for vehicular traffic in recent years, we conclude that the utilization of the alley by utilities under a franchise from the city, the graveling of the entire alley by the city, the provision in the curb for ingress and egress, and the refusal of the city to vacate the alley constitute sufficient evidence of the acceptance of the dedication.

269 N.W.2d at 400. Likewise, in *Miller*, we held that payment by the township for road grading, graveling, and maintenance supported the conclusion that the defendants had dedicated the roadway to the public, that there had been acceptance by the public, and that the roadway constituted a public road. 273 N.W.2d at 762.

SDCL 31–3–1 provides in full:

> Whenever any road shall have been used, worked, and kept in repair as a public highway continuously for twenty years, the same shall be deemed to have been legally located or dedicated to the public, and shall be and remain a public highway until changed or vacated in some manner provided by law.

Here, the evidence shows that the disputed roadway has been used for a period of at least twenty years. The record demonstrates that all parties to this lawsuit as well as their predecessors in interest; hunters; woodcutters; forest service personnel; state game, fish, and parks employees; and the general public have used the road openly, continuously, and without the appellants' or their predecessors' permission since 1940.

### Conduct of Sponheim

We find that when appellants' predecessors in interest moved their respective fences and gave their land to Meade County to be used for a public road, allowed installation of a drainage ditch along the road, and accepted road maintenance and snow removal from Meade County, they demonstrated conduct which clearly expressed the intention to dedicate.

The evidence shows that from 1973 until 1980, the appellees performed repair and maintenance work on the road on an annual basis. This included blading and gravel work on the road surface, mowing grass on the sides of the road, and plowing snow. The evidence further shows that Smith's husband, Homer Smith, similarly maintained the road from 1946 until approximately 1977. The Meade County Highway Department maintained the roadway, the ditch, and performed grading and graveling work on the road by its county crews from 1975 until 1978. Neither the appellants, nor their predecessors in title, have objected to the appellees, Homer Smith, or Meade County's general maintenance and snow removal upon the road. We find that the appellants' acceptance of these actions manifested their intent to impliedly dedicate their property as a public road.

### Actions By The Public

The evidence shows that Meade County initially improved the subject road by widening it in 1957. In doing so, the County graded, graveled, and installed culverts and a drainage ditch. The landowners did not merely acquiesce to this road work, they actively participated by removing their fences to accommodate the County. The record further shows that Meade County continued to maintain, repair, and perform snow removal on the road in 1966, 1972, and from 1975 through 1978. The trial court made the following conclusions:

> . . . .

> Meade County's conduct in performing improvements on and construction of the road ..., combined with the grading, graveling and snow removal performed by Meade County and the continuation of such maintenance and snow removal together with the control exercised over the road by Meade County constitutes an

acceptance by the public of the dedication by implication of the road by [appellants] and [appellants'] predecessors in interest as a public road.

. . . .

The conduct of Meade County in improving the road by grading, graveling and snow removal together with Meade County approving and accepting the ... subdivision as a subdivision in Meade County (Meade County Ordinances requiring that each subdivision have a public access) Meade County accepted the road on behalf of the public.

Based on this court's holdings in *Evans, Edmunds, Haley,* and *Miller, supra,* we cannot find that the trial court erred in concluding that County demonstrated acceptance of the roadway as a public road. Therefore, we find that Meade County's actions clearly justified acceptance by the public.

Sponheim relies heavily on *Brusseau, supra,* wherein this court reversed the trial court's declaration of a public road through implied dedication, despite the fact that the landowners acquiesced in use of the road, and failed to object when the roadway was improved. In *Brusseau,* however, it was undisputed that neither the county, nor any other public body had ever expended any public funds for construction, repair, or maintenance of the road in question; nor claimed any ownership or control thereof. 245 N.W.2d at 491. This stands in sharp contrast to the actions of Meade County in the present case.

In *First Church, supra,* we quoted with approval the words of the North Dakota Supreme Court in *Cole v. Minnesota Loan & Trust Co.,* 17 N.D. 409, 117 N.W. 354, 359 (1908), as follows:

'[O]wnership of land once had is not to be presumed to have been parted with; but the acts and declarations relied on to show a dedication should be unequivocal and decisive, manifesting a positive and unmistakable intention, on the part of the owner, to permanently abandon his property to the specific public use....'

68 S.D. at 385, 2 N.W.2d at 678.

Applying this principle to this case, we find that the evidence positively and unequivocally manifested the appellants intention to permanently abandon their property, and the public's acceptance for use as a public road. Accordingly, we hold that the trial court's conclusion that an implied dedication existed and was accepted was not clearly erroneous.

2. THE EVIDENCE SUPPORTS THE CONCLUSION THAT A PUBLIC ROAD EXISTED UNDER SDCL 31–3–1.

In *Smith v. Albrecht,* we stated:

There is no indication that the county is willing to accept the burden of maintaining both roads. Thus, there is a possibility that the county will not maintain the disputed road and it could become dangerous or useless to Smith. Unless the county is made a party to the action and can be ordered to maintain or accept the road that passes over Albrecht's property, complete relief cannot be accorded to the parties in this action.

361 N.W.2d at 628. As mentioned before, Meade County was joined as a party defendant as a result of this court's decision in *Smith, supra.*

In accordance with SDCL 31–3–1, "whenever any road [has] been used, worked, and kept in repair as a public highway continuously for twenty years, the same shall be deemed to have been legally ... dedicated[.]" Sponheim claims that the County's conduct over the years falls short of continued "use" and "repair" of the roadway under this statute. However, in *Haley,* we found that the city had accepted the dedication of an alley based upon evidence of its use by utility companies under a franchise from the city, and by the city's having graveled the entire alley even though the public had not used the disputed portion in recent years. 269 N.W.2d at 400. Here, we find that when the County initially improved the road in 1957 by widening it, and installing culverts and a drainage ditch,

this marked the beginning of the County's acceptance of the dedication. Further evidence of the County's treatment of the road as a public highway is demonstrated by its continual maintenance of the road, even though such maintenance was not always done on a regular basis.

The trial court found the testimony of Meade County Commissioner, Adolph "Coob" Anderson (Anderson) pertinent to the road's status as a public highway. Anderson testified that the County considered the roadway public and took responsibility for maintaining it. He further stated that when the County Commissioners accepted the plat for the new subdivision, they determined the roadway as public. The trial court found this testimony, coupled with the County's performance of maintenance, repair, and snow removal upon the road, sufficient evidence to show the establishment of a public road. We agree and hold that the trial court's conclusion that a public road existed under SDCL 31–3–1 was not clearly erroneous.

Accordingly, we affirm the trial court in all respects.

WUEST, C.J., MORGAN and HENDERSON, JJ., and FOSHEIM, Retired Justice, concur.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.