Merton C. PETERSON, Mark A. Peterson, Richard T. Peterson, and Merton C. Peterson, executor of the estate of Susan K. Peterson, Plaintiffs and Appellees,

v.

Richard E. BECK; Edward O. Eastwold and Harriet C. Eastwold, husband and wife; Nora J. Van Hove; Edna V. Barton; Randall J. Austad; and VBC, Inc., Defendants and Appellants.

No. 18876.

Supreme Court of South Dakota.

Argued May 22, 1995.

Decided Sept. 6, 1995.

Daniel J. Nichols of Craig, Nichols & Rabuck, Sioux Falls, for plaintiffs and appellees.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendants and appellants.

AMUNDSON, Justice.

Defendants Beck, et al. and VBC, Inc. (collectively referred to as VBC) appeal the trial court's finding that an implied easement existed over their property in favor of Merton C. Peterson and family (Peterson). We affirm.

## FACTS

Peterson owns and operates Cactus Heights Country Club, a private golf course (Golf Course) in Sioux Falls, which is surrounded by a residential area.[1] In 1964, Peterson's parents (Merton H. Peterson and Patricia L. Peterson, hereinafter, Grantor) entered into an agreement to sell property adjoining the Golf Course to the American Legion Club, Post Fifteen (Legion). The property sold to the Legion included a supper club and parking lot. In the years prior to this sale, patrons of the Golf Course used the parking lot between the supper club and the Golf Course while golfing and, having completed their round of golf, while dining at the supper club. It is this parking lot which is the center of this controversy.

In 1978, the Legion completed an exchange of property with a group of residential housing developers, which ultimately resulted in VBC owning the property which contains the parking lot. Peterson (Grantor's successor in interest) continued to use and maintain the parking lot consistent with the manner in which it had previously been used to accommodate the Golf Course and its patrons, and the trial court found that their use was obvious to any observer. In 1992, VBC demanded rent from Peterson for use of the parking lot. Soon thereafter, the conflict intensified as VBC began plans to develop its remaining section of land, including the parking lot.

On October 29, 1992, Peterson filed an action for quiet title, claiming adverse possession to the parking lot and other real estate owned by VBC. A trial was held on February 18, 1993, and April 28, 1993. The court found that the strip of land in which the parking lot exists was within the area previously owned by Grantor, sold to the Legion, and now owned by VBC, and that Peterson was not entitled to adverse possession under SDCL 15–3–10 or –15.

Nonetheless, after considering all the evidence, the court held that Peterson possessed an implied easement over the disputed parking lot area. It found that an implied easement to Grantor for the use of the parking lot was created when Grantor sold the property containing the parking lot to the Legion. In reaching this decision, the trial court noted reciprocal benefits existed for both Grantor and the Legion due to the parking lot's close proximity to both the Golf Course's club house and the Legion's supper club. The court also found that the parking lot was necessary for Golf Course operations. Although VBC conceded at trial that Peterson had some easement rights over the area for ingress and egress, they disputed the easement granted by the trial court for use of the parking lot. VBC appeals.

## ISSUES

I.   DID THE TRIAL COURT ERR BY NOT DISMISSING PETERSON'S ENTIRE QUIET TITLE ACTION UNDER SDCL 15–6–50(a) WHEN IT DENIED THE ADVERSE POSSESSION CLAIM?

II.  DID THE TRIAL COURT ERR IN GRANTING PETERSON AN EASEMENT BY IMPLICATION?

## DECISION

I. *Authority to Grant Easement in Quiet Title Action.*

■ VBC argues the trial court erred by granting Peterson's implied easement to the parking lot because it simultaneously denied his adverse possession claim. This argument

---

1. From 1958 until the completion of the sale to the Legion, there was a unity of ownership since Grantor owned both the Golf Course and the property on which the supper club and parking lot were built. Grantor was also president of the corporation which owned and operated the adjoining Golf Course.

is without a factual or legal basis. Peterson's summons and complaint constituted an action to quiet title, not one merely for adverse possession, and conformed with the statutory forms set forth in SDCL 21–41–7 and –11.[2] Peterson's complaint not only gave a general description of the adverse claims against VBC, it also went further to request the court to specifically grant adverse possession or, in the alternative, determine all "adverse claims to said real property."

A similar contention was considered in Nelson v. Gregory County, 323 N.W.2d 139, 142 (S.D.1982), where we held that even though the plaintiff's complaint failed to specifically request a determination of an easement right connected with the property, it did not preclude a determination of easement rights in a quiet title action. The *Nelson* court stated: "[T]he purposes of a quiet title action as set forth in SDCL 21–41–1 and SDCL 21–41–11 include a determination of easement rights." *Id.* (citation omitted). The trial court had the authority to make a determination of easement rights in considering Peterson's quiet title action even where it found that adverse possession had not been established.

## II. Existence of Implied Easement.

VBC argues the trial court erred by recognizing an implied easement in favor of Peterson where the chain of title includes warranty deeds from the Legion to VBC and where the Legion acquired its interest through warranty deeds.[3] Essentially, VBC contends that implied easements should never be recognized and that all disputes concerning interests in land must be determined only by resort to written instruments. In contrast, Peterson contends that an implied easement may exist under established case law and the Restatement of Property, and defends the trial court's analysis.

The standard rules which guide the interpretation of the documents conveying real property were discussed in Northwest Realty Co. v. Jacobs, 273 N.W.2d 141 (S.D.1978).

The paramount rule of construction is that the intention of the parties, and the grantor in particular, is to be ascertained by a fair consideration of the entire instrument and the language therein, without undue emphasis on any particular part or provision of the document. . . .

Furthermore, a grant is to be construed in favor of the grantee and a fee simple title is presumed to be intended to pass by a grant of real property *unless it appears from the grant that a lesser estate was intended.* Where the term "right of way" is used in a deed it usually indicates that only an easement or a right of passage is being conveyed or reserved. In such a case the instrument should be construed as conveying an easement unless the instrument, considered as a whole, indicates that the parties intended the passage of fee title.

If, however, construction of the instrument as a whole leaves the intention of the parties in doubt, consideration must be given to the situation and circumstances of the parties at the time of the execution of the deed in order to determine what was within their contemplation at that time.

---

2. Peterson's summons provided:
   YOU ARE HEREBY SUMMONED and required to answer the complaint of the Plaintiffs, which was filed in the office of the Clerk of this Court, at Sioux Falls, Minnehaha county, South Dakota, on the 29th day of October, 1992, and which *prays for a judgment quieting the title to and the determination of all adverse claims against the premises described in the Complaint* [.] (Emphasis added.)
   Similarly, Peterson's complaint followed the requirements for a complaint alleging quiet title under SDCL 21–41–11 which provides, in pertinent part:
   In an action brought pursuant to § 21–41–1 it shall be necessary for the plaintiff to state in his complaint *in general terms only* that he has or claims title in fee to the property, or a lien upon *or interest therein* as the case may be, . . . and that the action is brought for the purpose of *determining all adverse claims to such property* and of quieting title thereto in the plaintiff, or of determining the liens or interest of all parties in and to such property, as the case may be. . . . (Emphasis added.)

3. The transfer of the property from Grantor to the Legion was not a direct transfer. The parties used a "straw man" as an intermediary and, thus, there is no deed from Grantor to the Legion.

*Id.* at 144–45 (citations omitted; emphasis in original). It is in this vein VBC contends that, absent an express written conveyance of an easement and absent an easement by prescription, mere use of real property will not support an inference of an implied dedication. *See* Smith v. Sponheim, 399 N.W.2d 899 (S.D.1987).

VBC's reliance on *Smith* is misplaced and its contention that a warranty deed which does not contain an express easement precludes recognition of an implied easement is inconsistent with prior decisions of this court. *Smith* concerned the dedication of a public road, not an easement. Although the decision in *Northwest Realty* correctly states the manner in which deeds are interpreted, the focus of the issue there was whether there had been a conveyance of fee title or an easement only as the written documents were inconsistent. *Northwest Realty* did not address a circumstance where, as here, the written documents were silent as to an easement or right-of-way and the grantor and grantee had openly used the land in recognition of a servient estate, nor did it purport to limit the creation of easements to express conveyances.

■ South Dakota law has long recognized easements and it is well established that "[t]he extent of a servitude is determined by the terms of the grant, *or the nature of the enjoyment by which it was acquired.*" SDCL 43–13–5 (emphasis added). Once the parameters of an easement are established it runs with the land, passing to whomever buys the property for the benefit of the easement holder. SDCL 43–25–30.[4] An easement may be created by implication even where there is no express conveyance or the conveyance is not recorded because constructive notice is deemed to exist when an apparent servitude of one parcel in favor of another is obvious to anyone viewing the land.

In *Homes Development Co. v. Simmons,* 75 S.D. 575, 580, 70 N.W.2d 527, 530 (1955) (deeds did not refer to irrigation ditch easement or water right), we acknowledged the generally recognized rule:

> [W]here, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law.

(Citations omitted.) *See* Wiege v. Knock, 293 N.W.2d 146, 148 (S.D.1980) ("easement" not recorded). Such is the case here.

Also, like this case, the court in *Wiege* rejected the argument that an easement should not be recognized because it was not reserved in a deed or other recorded writing and, as a result, the subsequent purchasers had no notice of the easement. The *Wiege* court stated:

> Notice of an easement is generally imputed to a purchaser where the easement is of such character that a purchaser acting with ordinary diligence would know or learn of its existence. Thus, where the easement is open and visible, the purchaser will be charged with notice even though the easement was created by a grant which was not then recorded. The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry.

*Id.* at 148 (citations omitted). Here, the trial court found that the prior use of the parking lot was open and visible, based upon its ability to view the evidence and the witnesses at trial. *See* Voelker v. Voelker, 520 N.W.2d 903 (S.D.1994) (trial court's opportunity to observe witnesses and evidence first hand is to be accorded deference). Indeed, VBC concedes in its brief that the use of the parking lot was known to all of the parties.

---

4.  SDCL 43–25–30 provides:

    A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.

In reaching its decision, the trial court recognized the existence of Peterson's easement by adopting the Restatement of Property, §§ 450 and 474–76 (1944).[5] The precedent of this court establishes that implied easements have been recognized previously, and it is unnecessary to look beyond the authority of *Simmons* and its progeny to find the legal basis for the recognition of an implied easement. *See* Townsend v. Yankton Super 8 Motel, Inc., 371 N.W.2d 162, 164–65 (S.D.1985) (constructive notice of an unrecorded easement exists under SDCL 17–1–4 when purchaser or his agent has sufficient knowledge of the facts to put the prudent buyer on inquiry); *Steele v. Pfeifer,* 310 N.W.2d 782, 786 (S.D.1981) (notice of easement is determined by whether the purchaser had sufficient facts to inquire about the situation). Thus, we express no opinion as to the applicability of the Restatement here.

■ The trial court found that Grantor had used the parking lot for the Golf Course patrons prior to the sale to the Legion of the parcel containing the parking lot. It is also found that during the time subsequent to this sale, the Golf Course patrons continued to use the parking lot and that such use was beneficial to both Grantor, owner of the Golf Course, and the Legion, owner of the supper club.[6] The trial court specifically found that such use was open and obvious and VBC had constructive notice of the existence of this easement. Since VBC had notice of the easement, it acquired the property subject to the easement. Our review here is confined to a determination of whether there is evidence to support the trial court's decision, and this record clearly contains adequate evidence to support the conclusion reached. *See In re Estate of Smith,* 520 N.W.2d 80 (S.D.1994). We do not search out reasons to reverse the trial court, even if we would not have made a similar decision and, thus, the trial court's decision will not be reversed. *See Id.; City of Winner v. Bechtold Investments, Inc.,* 488 N.W.2d 416 (S.D.1992).

■ In addition, despite VBC's argument otherwise, the trial court found no showing that Peterson abandoned the easement by building a new club house. The court remarked that in order for abandonment to occur "there must be a showing of affirmative acts evidencing an intention by the dominant estate to give up the easement." Clear acts of nonuse demonstrating an abandonment of the right of use are absent from the facts of this case. *See* Shippy v. Hollopeter,

---

5. Section 450 of the Restatement defines an easement as:
   an interest in land in the possession of another which
   (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;
   (b) entitles him to protection as against third persons from interference in such use or enjoyment;
   (c) is not subject to the will of the possessor of the land;

   .   .   .   .   .

   (e) is capable of creation by conveyance.
   Section 474 recognizes an implied easement "in favor of one who has or may have a possessory interest in one part as against one who has or may have a possessory interest in another part by implication from the circumstances under which the conveyance was made, alone."
   Under § 475(a), an implied easement exists only when "the conveyance [of an estate in land] satisf[ies] the formal requisites established by local law for the creation of an estate in land of the duration of that conveyed."
   Section 476 sets out the factors to be considered in determining whether an easement exists. They are:

   (a) whether the claimant is the conveyor or the conveyee,
   (b) the terms of the conveyance,
   (c) the consideration given for it,
   (d) whether the claim is made against a simultaneous conveyee,
   (e) the extent of necessity of the easement to the claimant,
   (f) whether reciprocal benefits result to the conveyor and the conveyee,
   (g) the manner in which the land was used prior to its conveyance, and
   (h) the extent to which the manner of prior use was or might have been known to the parties.

6. We note that VBC contends that, under the holding *Smith,* "an easement by implication (after a warranty deed) can only arise by the permissive intent of the owner of the property." *See* 399 N.W.2d 899. Indeed, the evidence relied upon by the trial court was that the Legion (the owner of the parking lot property at the time it was severed from Grantor's larger estate) did allow Grantor to continue to use the parking lot for the Golf Course patrons.

304 N.W.2d 118, 121–22 (S.D.1981); Miller v. Southard, 38 S.D. 477, 162 N.W. 146 (1917). The trial court found no evidence whatever to support an abandonment.

We have considered the balance of VBC's arguments and find them to be without merit. The decision of the trial court is affirmed in its entirety.

MILLER, C.J., KONENKAMP and GILBERTSON, JJ., and RUSCH, Circuit Judge, concur.

RUSCH, Circuit Judge, sitting for SABERS, J., disqualified.